## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x

*In re:*                                        :
                                                :    **Chapter 11**
                                                :
**EMERGE ENERGY SERVICES LP,** *et al.*         :    **Case No. 19– 11563 (KBO)**
                                                :
Debtors.[1]                                     :    **Jointly Administered**
                                                :
                                                :    **Re: Docket Nos. 20 & 64**
                                                :

---------------------------------------------------------- x

## FINAL ORDER (I) AUTHORIZING THE
## DEBTORS TO (A) OBTAIN POSTPETITION FINANCING
## AND (B) USE CASH COLLATERAL, (II) GRANTING CERTAIN
## PROTECTIONS TO PREPETITION SECURED PARTIES, (III) SCHEDULING
## A FINAL HEARING, AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "**Motion**") of Emerge Energy Services Operating, LLC and Superior Silica Sands LLC (together, the "**Borrowers**") and their affiliated debtors, each as a debtor and debtor-in-possession (collectively, the "**Debtors**") in the above captioned cases (the "**Chapter 11 Cases**"), pursuant to sections 105, 361, 362, 363(b), 363(c)(2), 364(c)(1), 364(c)(2), 364(c)(3), 364(d)(1), 364(e), 503, 506(c) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532, *et seq.* (as amended, the "**Bankruptcy Code**"), Rules 2002, 4001, 6003, 6004 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**") and Rules 2002-1(b) and 4001-2 of the Bankruptcy Local Rules for the District of Delaware (the "**Local Bankruptcy Rules**"), seeking, among other things:

A.    authority for the Borrowers to obtain senior secured debtor-in-possession financing (the "**DIP Financing**"), and for Emerge Energy Services LP,  the direct parent of the Borrowers and each direct and indirect subsidiary of the Borrowers

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Emerge Energy Services LP (2937), Emerge Energy Services GP LLC (4683), Emerge Energy Services Operating LLC (2511), Superior Silica Sands LLC (9889), and Emerge Energy Services Finance Corporation (9875).  The Debtors' address is 5600 Clearfork Main Street, Suite 400, Fort Worth, Texas 76109.

that is a Debtor (each a "**Guarantor**" and, collectively in their capacities as such, the "**Guarantors**"; the Guarantors collectively with the Borrowers, the "**Loan Parties**")[2] to unconditionally guaranty, on a joint and several basis, the Borrowers' obligations in connection with the DIP Financing, consisting of a senior secured revolving credit facility (the "**DIP Facility**"), in an aggregate principal amount of up to $35,000,000 (the "**New Money DIP**"), plus any Roll-Up Loans (as defined below) (collectively, the "**DIP Commitments**"), all on the terms and conditions set forth in this final order (the "**Final Order**") and the DIP Documents (as defined below);

B.      authority for the Loan Parties to (A) execute and enter into the *Superpriority Senior Secured Debtor-in-Possession Credit Agreement*, among the Borrowers, the Guarantors, the lenders from time to time thereto (collectively, the "**DIP Lenders**"), and HPS Investment Partners, LLC, as administrative agent (the "**DIP Agent**" and, together with the DIP Lenders, the "**DIP Secured Parties**"), substantially in the form attached hereto as **<u>Exhibit A</u>** (as amended, supplemented or otherwise modified from time to time in accordance with the terms hereof and thereof, the "**DIP Credit Agreement**" and, together with any other agreements, instruments, pledge agreements, guarantees, security agreements, intellectual property security agreements, control agreements, notes and other Credit Documents (as defined in the DIP Credit Agreement) and documents related thereto, the DIP Credit Agreement, the "**DIP Documents**") and (B) perform all such other and further acts as may be necessary, appropriate, or desirable in connection with the DIP Facility and the DIP Documents;

C.      authority to grant adequate protection to (i) HPS Investment Partners, LLC, in its capacity as administrative agent and collateral agent (the "**Prepetition Revolver Agent**"), and the lenders as of March 15, 2019 and from time to time thereafter (the "**Prepetition Lenders**")[3] party to that certain *Second Amended and Restated Revolving Credit and Security Agreement*, dated January 5, 2018 (as amended, restated, amended and restated, supplemented or otherwise modified prior to the date hereof, including most recently pursuant to that certain *Forbearance Agreement and Third Amendment to Second Amended and Restated Revolving Credit and Security Agreement*, dated as of February 28, 2019 (the "**Third Forbearance Agreement**")) (together with any ancillary documents, security agreements, guarantees and pledge agreements in connection therewith, the "**Prepetition Revolving Credit Agreement**"), and (ii) HPS Investment Partners, LLC, in its capacity as administrative agent and note agent (the "**Prepetition Note Agent**" and, together with the Prepetition Revolver Agent, the "**Prepetition Agents**"), and the noteholders from time to time (collectively, the "**Prepetition Noteholders**" and, together with the Prepetition Lenders, the "**Prepetition**

---

[2]  For the avoidance of doubt, the Loan Parties do not include Emerge Energy Services GP LLC.

[3]  For the avoidance of doubt, reference in this Final Order to "Prepetition Lenders" does not include PNC Bank National Association and the lenders party to the Prepetition Revolving Credit Agreement (as hereinafter defined) prior to March 15, 2019.

**Secured Parties**") party to that certain *Second Lien Note Purchase Agreement*, dated as of January 5, 2018 (as amended, restated, amended and restated, supplemented or otherwise modified prior to the date hereof, including most recently pursuant to that certain *Forbearance Agreement and Second Amendment to Second Lien Note Purchase Agreement*, dated as of January 31, 2019 (the "**Second Forbearance Agreement**")) (together with any ancillary documents, security agreements, guarantees, pledge agreements and notes issued in connection therewith, the "**Prepetition Note Purchase Agreement**" and, together with the Prepetition Revolving Credit Agreement, the "**Prepetition Credit Documents**");

D.      authority for the Borrowers to use net cash proceeds from the sale of any Prepetition Collateral (as defined below) or the proceeds from receivables to effect the Roll-Up (as defined below) and *thereafter* to pay accrued interest, principal and other amounts outstanding under the DIP Credit Agreement;

E.      subject to the restrictions set forth in the DIP Documents and this Final Order, authority for the Loan Parties to use Cash Collateral (as defined below) and all other Prepetition Collateral (as defined below) in which any of the Prepetition Secured Parties have an interest and the granting of adequate protection to the Prepetition Agents on behalf of the Prepetition Secured Parties on the terms set forth in this Final Order, with respect to, *inter alia*, such use of Cash Collateral and the other Prepetition Collateral;

F.      authority for the Debtors' use of the proceeds of the DIP Facility pursuant to the DIP Credit Agreement and the other DIP Documents, including the Approved Budget (as defined below) (subject to permitted variances);

G.      subject to the payment in full in cash of the Carve-Out (as defined below), the granting to the DIP Secured Parties of allowed superpriority claims pursuant to section 364(c)(1) of the Bankruptcy Code, as further described herein, payable from and having recourse to all prepetition and postpetition property of the Loan Parties' estates and all proceeds thereof (other than the Avoidance Actions and any Avoidance Proceeds (each as defined below));

H.      authority for the granting to the DIP Agent (for the benefit of the DIP Secured Parties) of liens pursuant to sections 364(c)(2) and 364(c)(3) of the Bankruptcy Code and priming liens pursuant to section 364(d) of the Bankruptcy Code on all prepetition and postpetition property of the Loan Parties' estates and all proceeds thereof (other than the Avoidance Actions and Avoidance Proceeds (each as defined below), in each case subject to the payment in full in cash of the Carve-Out;

I.      authority for the Loan Parties to pay, on a final and irrevocable basis, the principal, interest, fees, expenses and other amounts payable under the DIP Documents as such become earned, due and payable, including, but not limited to, upfront fees, backstop fees, closing date fees, commitment fees, exit fees,

prepayment fees, agency fees, audit fees, appraisal fees, valuation fees, administrative agent's fees, the reasonable fees and disbursements of the DIP Agent's and DIP Lenders' attorneys, all to the extent provided in, and in accordance with, the DIP Documents;

J.     approval of certain stipulations by the Debtors with respect to the Prepetition Credit Documents and the liens and security interests arising therefrom;

K.    Subject to the terms of this Final Order, as applicable, the waiver of (i) the Debtors' right to surcharge the Prepetition Collateral and the DIP Collateral (as defined below) pursuant to section 506(c) of the Bankruptcy Code (subject to the payment in full in cash of the Carve-Out), and (ii) any right of the Debtors under the "equities of the case" exception in section 552(b) of the Bankruptcy Code; and

L.     modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent set forth herein and necessary to implement and effectuate the terms and provisions of this Final Order and the DIP Documents.

The Court having reviewed the Motion, the exhibits attached thereto, the DIP Documents, the *Declaration of Bryan Gaston, Restructuring Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Pleadings*, the Declaration of Adam L. Dunayer, Managing Director of Houlihan Lokey, in support of the Motion, and the Declaration of Bryan Gaston, Restructuring Officer of the Debtors, in support of the Motion, and the evidence submitted and arguments made at the interim hearing held on July 17, 2019 (the "**Interim Hearing**"); and the Court having entered the *Interim Order (I) Authorizing the Debtors to (A) Obtain Postpetition Financing and (B) Use Cash Collateral, (II) Granting Certain Protections to Prepetition Secured Parties, (III) Scheduling a Final Hearing, and (IV) Granting Related Relief* [D.I. 64] (the "**Interim Order**"); and the Court having scheduled, pursuant to Bankruptcy Rule 4001 and Local Rule 4001-2, the final hearing (the "**Final Hearing**") to consider entry of this Final Order on August 14, 2019 at 11:00 a.m. (Eastern Time); and due and sufficient notice of the Motion, the Interim Hearing, and the Final Hearing having been given in accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and all applicable Local Rules; and the opportunity to object having been given under the circumstances; and all objections, if any, to the final relief requested

in the Motion having been withdrawn, resolved or overruled by the Court; and the Court having

determined that the legal and factual bases set forth in the Motion establish just cause for the

relief granted herein and that such relief is in the best interests of the Debtors and their estates

and is necessary to avoid immediate and irreparable harm to the Debtors and their estates, and is

essential for the continued operation of the Debtors' business and the preservation of the value of

the Debtors' assets; and it appearing that the Debtors' entry into the DIP Documents is a sound

and prudent exercise of the Debtors' business judgment; and upon all of the proceedings had

before this Court and after due deliberation and sufficient cause appearing therefor;

IT IS FOUND, DETERMINED, ORDERED AND ADJUDGED, that:

1.    *Disposition.*  The relief requested in the Motion is granted on a final basis as set

forth herein.  Any objections to the Motion with respect to the entry of this Final Order that have

not been withdrawn, waived or settled are hereby denied and overruled on the merits.  This Final

Order shall become effective immediately upon its entry.

2.    *Petition Date*.  On July 15, 2019 (the "**Petition Date**"), each of the Debtors

commenced with this Court a voluntary case under chapter 11 of the Bankruptcy Code in the

United States Bankruptcy Court for the District of Delaware (the "**Court**").  Each Debtor is

authorized to continue to operate its business and manage its properties as a debtor in possession

pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

3.    *Jurisdiction and Venue*.  This Court has jurisdiction over the Chapter 11 Cases,

the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and

1334 and the *Amended Standing Order of Reference* from the United States District Court for the

District of Delaware, dated as of February 29, 2012.  This is a core proceeding pursuant to

28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5

4.     *Committee Formation*. On July 31, 2019, the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed an official committee of unsecured creditors in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code (the "**Creditors' Committee**") [D.I. 111].

5.     *Notice*. Notice of the Motion, the relief requested therein and the Final Hearing has been provided in accordance with Local Bankruptcy Rule 9013-1(m)(iii), and no other or further notice of the Motion or the entry of this Final Order shall be required. Under the circumstances, the notice given by the Debtors of the final relief requested in the Motion and of the Final Hearing constitutes due and sufficient notice thereof and complies with Bankruptcy Rules 4001(b) and (c) and 9014, and Local Rule 4001-2, and no further notice of the relief sought at the Final Hearing is necessary or required.

6.     *Debtors' Stipulations*. Without prejudice to the rights of any party in interest and subject to the limitations thereon contained in paragraphs 26 and 27 below, the Debtors admit, stipulate and agree that:

(a)     As of the Petition Date, the Loan Parties (other than Emerge Energy Services Finance Corporation) were indebted and jointly and severally liable to the Prepetition Secured Parties, without objection, defense, counterclaim or offset of any kind, as follows:

(i)     *Prepetition Revolver Obligations*. Pursuant to the Prepetition Revolving Credit Agreement, the Prepetition Lenders provided to the Borrowers a facility for loans and advances and the cash collateralization of all outstanding letters of credit or letters of credit guaranties under the Prepetition Revolving Credit Agreement, in an aggregate principal amount of not less than $75,000,000. As of the Petition Date, the Prepetition Lenders are owed an aggregate principal amount of not less than $66,726,984.56, plus unliquidated amounts including interest thereon and fees, expenses, charges and other obligations incurred in connection with the Prepetition Revolving Credit Agreement (collectively, such obligations, the "**Prepetition Revolver Obligations**"), and the Borrowers and the Guarantors (other than Emerge Energy Services Finance

Corporation) are unconditionally liable, without defense, counterclaim, offset or setoff of any kind, with respect to the Prepetition Revolver Obligations. The Commitments (as defined in the Prepetition Revolving Credit Agreement) under the Prepetition Revolving Credit Agreement are terminated in full as of the Petition Date.

(ii)     *Prepetition Revolver Liens*. To secure the Prepetition Revolver Obligations, the Borrowers and the Guarantors (other than Emerge Energy Services Finance Corporation) entered into various security and collateral documents pursuant to and in connection with the Prepetition Revolving Credit Agreement, pursuant to which the Prepetition Revolver Agent, for the benefit of itself and the Prepetition Lenders, was granted valid, binding, perfected, enforceable, first-priority liens and security interests in the Collateral (as defined in the Prepetition Revolving Credit Agreement and the Prepetition Note Purchase Agreement, as applicable) (such Collateral, the "**Prepetition Collateral**" and such liens and security interests, the "**Prepetition Revolver Liens**"). The Prepetition Revolver Liens granted in connection with the Prepetition Revolving Credit Agreement, are: (x) valid, binding, perfected, enforceable, first-priority liens, and security interests in the Prepetition Collateral; (y) not subject to avoidance, recharacterization, subordination, recovery, attack, effect, counterclaim, defense or claim under the Bankruptcy Code or applicable non-bankruptcy law; and (z) as of the Petition Date are subject and subordinate only to certain valid, perfected, and unavoidable liens permitted under the Prepetition Revolving Credit Agreement to the extent such liens are senior to or *pari passu* with the liens of the Prepetition Revolver Agent and the Prepetition Lenders on the Prepetition Collateral.

(iii)     *Prepetition Note Obligations*. Pursuant to the Prepetition Note Purchase Agreement, the Borrowers issued notes to the Prepetition Noteholders and the Prepetition Noteholders made certain other financial accommodations to the Borrowers in an aggregate principal amount of not less than $215,000,000. As of the Petition Date, the Prepetition Noteholders are owed the aggregate principal amount of not less than $215,891,326.70, plus unliquidated amounts including interest thereon and fees, expenses, charges, Make Whole Amount and/or Applicable Redemption Premium (each as defined in the Prepetition Note Purchase Agreement), and other obligations incurred in connection with the Prepetition Note Purchase Agreement (collectively, such obligations, the "**Prepetition Note Obligations**" and, together with the Prepetition Revolver Obligations, the "**Prepetition Debt**"), and the Borrowers and the Guarantors (other than Emerge Energy Services Finance Corporation) are unconditionally liable, without defense, counterclaim, offset or setoff of any kind, with respect to the Prepetition Note Obligations. The Commitments (as defined in the Prepetition Note Purchase Agreement) under the Prepetition Note Purchase Agreement are terminated in full as of the Petition Date.

(iv)   *Prepetition Note Liens*.   To secure the Prepetition Note Obligations, the Borrowers and the Guarantors (other than Emerge Energy Services Finance Corporation) entered into various security and collateral documents pursuant to and in connection with the Prepetition Note Purchase Agreement, pursuant to which the Prepetition Note Agent, for the benefit of itself and the Prepetition Noteholders, was granted valid, binding, perfected, enforceable, first-priority liens and security interests in the Prepetition Collateral (the "**Prepetition Note Liens**" and, together with the Prepetition Revolver Liens, the "**Prepetition Liens**"), subject to the Prepetition Revolver Liens as provided in the Intercreditor Agreement (as defined below).  The Prepetition Note Liens granted in connection with the Prepetition Note Purchase Agreement, are: (x) valid, binding, perfected, enforceable, first-priority liens, and security interests in the Prepetition Collateral; (y) not subject to avoidance, recharacterization, subordination, recovery, attack, effect, counterclaim, defense or claim under the Bankruptcy Code or applicable non-bankruptcy law; and (z) as of the Petition Date are subject and subordinate only to certain valid, perfected, and unavoidable liens permitted under the Prepetition Note Purchase Agreement to the extent such liens are senior to or *pari passu* with the liens of the Prepetition Note Agent and the Prepetition Noteholders on the Prepetition Collateral.

(b)   By virtue of any of the actions taken with respect to, in connection with, related to, or arising from the Prepetition Credit Documents, none of the Prepetition Secured Parties control the Debtors or their properties or operations, have authority to determine the manner in which any Debtor's operations are conducted or are control persons or insiders of the Debtors.

(c)   The Prepetition Debt constitutes the legal, valid, binding, non-avoidable and enforceable obligations of the Loan Parties (other than Emerge Energy Services Finance Corporation), and the Prepetition Liens are valid, binding, properly perfected, non-avoidable, and enforceable liens on and security interests in the Prepetition Collateral.

(d)   All proceeds of the Prepetition Collateral and all cash and cash equivalent proceeds maintained in deposit or securities accounts subject to prepetition control agreements or otherwise within the control (as such term is defined in the Uniform Commercial Code) of the

Prepetition Secured Parties, are "cash collateral" of the Prepetition Secured Parties within the meaning of section 363(a) of the Bankruptcy Code (the "**Cash Collateral**").

(e)     The Prepetition Revolver Agent and the Prepetition Note Agent are party to that certain *First Lien/Second Lien Intercreditor Agreement*, dated as of January 5, 2018, and acknowledged by Emerge Energy Services LP and the Borrowers (as amended, restated, supplemented, or otherwise modified in accordance with its terms, the "**Intercreditor Agreement**"), to govern the respective rights, interests, obligations and priority of the Prepetition Secured Parties with respect to the Prepetition Collateral.   Pursuant to the Intercreditor Agreement (a) the Prepetition Revolver Liens in respect of the Prepetition Collateral securing the Prepetition Revolver Obligations are senior to any Prepetition Note Lien in respect of the Prepetition Collateral securing the Prepetition Note Obligations, and (b) the Prepetition Note Liens in respect of the Prepetition Collateral securing the Prepetition Note Obligations are junior and subordinate in all respects to the Prepetition Revolver Liens in respect of the Prepetition Collateral securing the Prepetition Revolver Obligations.

(f)     The liens granted by the Loan Parties to the DIP Agent on behalf of the DIP Lenders shall be valid, enforceable and non-avoidable liens against the Loan Parties.

(g)     Events of default have occurred and are continuing under the terms of the Prepetition Revolver Credit Agreement and the Prepetition Note Purchase Agreement, as set forth in, but not limited to, those events of default described in the Third Forbearance and the Second Forbearance Agreement, respectively. The Prepetition Secured Parties expressly reserve all of their respective rights, powers, privileges and remedies under the Prepetition Credit Documents and/or applicable law.

RLF1 21876487v.3

7.      *Release*.  Effective as of the date of entry of this Final Order, but subject in all respects to paragraph 26 hereof, including the expiration of the Challenge Period, the Debtors and the Loan Parties hereby absolutely, unconditionally, and irrevocably release and forever discharge and acquit the Prepetition Secured Parties and their respective Representatives (as defined below) (collectively, the "**Released Parties**") from any and all obligations and liabilities to the Debtors (and their successors and assigns) and from any and all "claims" (as defined in the Bankruptcy Code), counterclaims, demands, debts, accounts, contracts, liabilities, actions and causes of action arising prior to the Petition Date (including, without limitation, causes of action in the nature of "lender liability"), setoff, recoupment or other offset rights against any and all of the Released Parties, of any kind, nature or description, whether known or unknown, foreseen or unforeseen or liquidated or unliquidated, arising in law or equity or upon contract or tort or under any state or federal law or otherwise, arising out of or related to (as applicable) the Prepetition Credit Documents, including, without limitation, the obligations owing and the financial obligations made thereunder, the negotiation thereof and of the deal reflected thereby, the Prepetition Collateral or the debtor-creditor relationship among any of the applicable Prepetition Secured Parties, on the one hand, and the Debtors, on the other hand, from the beginning of time until immediately preceding the entry of this Final Order, in each case that the Debtors at any time had, now have or may have, or that their successors or assigns hereafter can or may have against any of the Released Parties for or by reason of any act, omission, matter, cause or thing whatsoever arising at any time on or prior to the date of this Final Order (collectively, the "**Released Claims**"), whether such Released Claims are matured or unmatured.

8.      *Findings Regarding the DIP Financing and Cash Collateral.*

(a)     Good and sufficient cause has been shown for the entry of this Final Order.

(b)     The Loan Parties need to obtain the full amount of the financing provided under the DIP Facility and to continue to use the Prepetition Collateral (including Cash Collateral).  The Loan Parties' borrowings from the DIP Lenders under the DIP Facility will be used in a manner consistent with the terms and conditions of the applicable DIP Documents and this Final Order, including paragraph 27 herein:   (i) to consummate the transactions contemplated by the DIP Documents and pay related fees, costs and expenses, (ii) for working capital and other general corporate purposes of the Borrowers and the Guarantors during the pendency of the Chapter 11 Cases; (iii) to make adequate protection payments as described in paragraph 18(d), and (iv) to pay certain fees and expenses of professionals retained by the Debtors and the Creditors' Committee, subject to the Carve-Out and for certain other prepetition and pre-filing expenses that are approved by the applicable Bankruptcy Court and consented to by the DIP Agent, in each case of the foregoing clauses (i), (ii), (iii) and (iv) in accordance with the Approved Budget (except as expressly provided in Paragraph 11 below with respect to Professional Fees and Statutory Fees) or otherwise with the prior written consent of the DIP Agent in its sole discretion.  Except with the prior written consent of the DIP Agent in its sole discretion and pursuant to further order of the Court, the Debtors shall not be permitted to use the proceeds of the DIP Facility and the proceeds of Collateral in contravention of the provisions of the orders entered in the Chapter 11 Cases, including any restrictions or limitations on the use of proceeds contained therein.  The Loan Parties' access to sufficient working capital through the use of Cash Collateral and other Prepetition Collateral and the incurrence of indebtedness under the DIP Facility are necessary and vital to the preservation and maintenance of the going concern

RLF1 21876487v.3

values of the Loan Parties.  The Loan Parties' use of Cash Collateral alone would be insufficient to meet the Debtors' cash disbursement needs during the Chapter 11 Cases.  The access by the Loan Parties to sufficient working capital and liquidity through the use of Cash Collateral and other Prepetition Collateral, incurrence of new indebtedness under the DIP Facility and other financial accommodations provided under the DIP Documents are necessary and vital to avoid an immediate liquidation and for the preservation and maintenance of the going concern values of the Loan Parties and to a successful restructuring of the Loan Parties.

(c)     The Loan Parties are unable to obtain financing on terms more favorable than that offered by the DIP Lenders under the DIP Documents and are unable to obtain adequate unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense.  The Loan Parties are also unable to obtain secured credit allowable solely under sections 364(c)(1), 364(c)(2), and 364(c)(3) of the Bankruptcy Code without the Loan Parties granting to the DIP Agent and the DIP Lenders, subject to the Carve-Out, the DIP Liens and the DIP Superpriority Claims (as defined below) on the terms and conditions set forth herein, and granting the Adequate Protection Obligations (as defined below), in each case, under the terms and conditions set forth in this Final Order and in the DIP Documents.

(d)     Based on the Motion, the declarations filed in support of the Motion, and the record presented to the Court at the Interim Hearing and the Final Hearing, the terms of the DIP Financing, the terms of the Adequate Protection Obligations, and the terms on which the Loan Parties may continue to use the Prepetition Collateral (including Cash Collateral) pursuant to this Final Order and the DIP Documents, are in each case fair and reasonable, reflect the Loan Parties' exercise of prudent business judgment, constitute reasonably equivalent value and fair consideration, and represent the best financing available.  The adequate protection provided in

12

the Interim Order and this Final Order and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code.

(e)    To the extent such consent is required, the Prepetition Secured Parties have consented (or, where applicable, are deemed to have consented pursuant to the Intercreditor Agreement) to the use of Cash Collateral and the other Prepetition Collateral, the priming of the Prepetition Liens pursuant to section 364(d)(1) of the Bankruptcy Code, and the Debtors' entry into the DIP Documents in accordance with and subject to the terms of this Final Order and the DIP Documents.

(f)    Subject to the Challenge Period to the extent set forth in Paragraph 26 in connection with the Prepetition Debt (including any Roll-Up Loans) and the Prepetition Liens, the DIP Financing, as well as the terms of the Adequate Protection Obligations, and the use of the Prepetition Collateral (including Cash Collateral) have been negotiated in good faith and at arm's length among the Loan Parties, the Prepetition Secured Parties, the DIP Agent, and the DIP Lenders, and their respective advisors, and all of the Loan Parties' obligations and indebtedness arising under, in respect of, or in connection with, the DIP Financing and the DIP Documents, including, without limitation: (i) all loans made to and guarantees issued by the Loan Parties pursuant to the DIP Documents (collectively, the "**DIP Loans**") and (ii) any "**Obligations**" (as defined in the DIP Credit Agreement) of the Loan Parties owing to the DIP Agent, any DIP Lender or any of their respective affiliates, in accordance with the terms of the DIP Documents, including any obligations, to the extent provided for in the DIP Documents, to indemnify the DIP Agent or the DIP Lenders in their capacity as such and to pay any fees, expenses (including any attorneys', accountants', appraisers' and financial advisors' fees that are chargeable or reimbursable under the DIP Documents, subject to the procedures set forth in

13

paragraph 18(c) below), amounts, charges, costs, indemnities and other obligations that are chargeable or reimbursable under the Interim Order, this Final Order or the DIP Documents (the foregoing in clauses (i) and (ii) collectively, the "**DIP Obligations**"), shall be deemed to have been extended by the DIP Secured Parties in good faith, as that term is used in section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Agent and the DIP Lenders (and the successors and assigns thereof) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.  The Prepetition Secured Parties have acted in good faith regarding the DIP Financing and the Loan Parties' continued use of the Prepetition Collateral (including the Cash Collateral) to fund the administration of the Debtors' estates and the continued operation of their business (including the incurrence and payment of the Adequate Protection Obligations and the granting of the Adequate Protection Liens), in accordance with the terms hereof, and the Prepetition Secured Parties (and the successors and assigns thereof) shall be entitled to the full protection of section 363(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

(g)     Subject to the Challenge Period to the extent set forth in Paragraph 26, the Prepetition Secured Parties are entitled to the adequate protection provided in this Final Order as and to the extent set forth herein pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code.  Based on the Motion, the declarations filed in support of the Motion, and the record presented to the Court at the Interim Hearing and the Final Hearing, the terms of the proposed adequate protection arrangements and of the use of the Prepetition Collateral (including Cash Collateral) are fair and reasonable, reflect the Loan Parties' prudent exercise of business

14

judgment and constitute reasonably equivalent value and fair consideration for the use of Cash Collateral; *provided* that nothing in this Final Order or the other DIP Documents shall (x) be construed as the affirmative consent by any of the Prepetition Secured Parties for the use of Cash Collateral, other than on the terms set forth in this Final Order and in the context of the DIP Financing authorized by this Final Order, (y) be construed as a consent by any party to the terms of any other financing or any other lien encumbering the Prepetition Collateral (whether senior or junior), or (z) prejudice, limit or otherwise impair the rights of any of the Prepetition Secured Parties to seek new, different or additional adequate protection or assert the interests of any of the Prepetition Secured Parties.

(h)     Any net cash proceeds received by the Loan Parties from the sale of any Prepetition Collateral or the proceeds from receivables shall be (i) retained by the Loan Parties *and* (ii) deemed to repay, on a dollar-for-dollar basis, and discharge, until paid in full, the aggregate outstanding principal indebtedness under the Prepetition Revolving Credit Agreement, including the amount currently cash collateralizing all outstanding letters of credit or letters of credit guaranties thereunder and any interest accrued through the date of discharge *and* (iii) be deemed borrowed by the Borrowers and deemed funded by each DIP Lender in the exact same principal amount equal to the aggregate outstanding principal amount of the Prepetition Revolver Obligations held by such Lender on the date immediately prior to the deemed funding of such Roll-Up Loan, on a dollar-for-dollar basis, under the DIP Facility in accordance with the terms of the DIP Documents and this Final Order (the "**Roll-Up Loans**") (and clauses (i), (ii) and (iii) together, but without duplication, the "**Roll-Up**"); *provided, however*, that the Roll-Up Loans are subject to the Challenge (as defined below) set forth in paragraph 26 of this Final Order; *provided, further* that the Roll-Up Loans shall be Obligations of, and the liens in respect thereof

shall attach to the assets (other than Unencumbered Assets (as defined below) and the proceeds thereof) of the Loan Parties, but excluding Emerge Energy Services Finance Corporation.  It is an exercise of the Loan Parties' prudent business judgment to effect and consummate the Roll-Up.

(i)    The Debtors have prepared and delivered to the DIP Agent and the DIP Lenders an initial budget (the "**Initial DIP Budget**"), a copy of which is attached hereto as **Exhibit B**. The Initial DIP Budget reflects the Debtors' anticipated net cash flow and anticipated disbursements for each calendar week during the period from the Petition Date through and including the end of the eighteenth week following the Petition Date.  The Initial DIP Budget may be modified, amended and updated from time to time in accordance with the DIP Credit Agreement, and once approved by, in form and substance reasonably satisfactory to the DIP Required Lenders,[4] shall supplement and replace the Initial DIP Budget (the Initial DIP Budget and each subsequent approved budget, shall constitute without duplication, an "**Approved Budget**"); *provided, that* the Debtors will provide counsel to the Creditors' Committee and the U.S. Trustee at least two (2) business days' notice of any material modifications, amendments, updates and supplements to the Approved Budget and after the expiration of such notice period shall file with the Court such modification, amendment, update or supplement.  During the foregoing two (2) business day notice period, the Creditors' Committee and/or the U.S. Trustee shall have the right to object to any such amendment, waiver or other modification to the Approved Budget and seek an emergency hearing thereon.

(j)    The Debtors believe that the Initial DIP Budget is reasonable under the facts and circumstances. The DIP Agent and the DIP Lenders are relying, in part, upon the

---

[4] "**DIP Required Lenders**" means "Required Lenders" as defined in the DIP Credit Agreement.

Debtors' agreement to comply with the Approved Budget, the other DIP Documents, and this Final Order in determining to enter into the postpetition financing arrangements provided for in this Final Order.

(k)     The Debtors have requested immediate entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and 4001(c)(2) and Local Bankruptcy Rule 4001-2(b).  Absent granting the relief set forth in this Final Order, the Loan Parties' estates will be immediately and irreparably harmed.  Consummation of the DIP Financing and the use of Prepetition Collateral, including Cash Collateral, in accordance with this Final Order and the DIP Documents are therefore in the best interests of the Loan Parties' estates.

9.     *Authorization of the DIP Financing and the DIP Documents.*

(a)     In addition to the authority granted in the Interim Order, the Loan Parties are hereby authorized to execute, enter into and perform all obligations under the DIP Documents.  The Borrowers were authorized under the Interim Order and are hereby again authorized to borrow money (or deem to borrow, in the case of Roll-Up Loans) pursuant to the DIP Credit Agreement, and the Guarantors were authorized under the Interim Order and are hereby again authorized to guaranty the Borrower's obligations with respect to such borrowings, on a final basis in an aggregate principal or face amount not to exceed $35,000,000 plus any Roll-Up Loans, which shall be used for all purposes permitted under the DIP Documents (and subject to the terms and conditions set forth herein and therein).

(b)     In furtherance of the foregoing and without further approval of this Court, and in addition to the authority granted in the Interim Order, each Loan Party is authorized to perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the execution or recordation of security agreements, mortgages and financing

statements), and to pay all fees that may be reasonably required or necessary for the Loan Parties' performance of their obligations under or related to the DIP Financing, including, without limitation:

(i)      the execution and delivery of, and performance under, each of the DIP Documents;

(ii)     the execution and delivery of, and performance under, one or more amendments, waivers, consents or other modifications to and under the DIP Documents, in each case, in such form as the Loan Parties, the DIP Agent, and the DIP Required Lenders may agree, it being understood that no further approval of the Court shall be required for authorizations, non-material amendments, waivers, consents or other non-material modifications to and under the DIP Documents, provided, however, that all material amendments and modifications to and under the DIP Documents, including but not limited to those that shorten the maturity of the extensions of credit thereunder or increase the aggregate commitments or the rate of interest payable thereunder, shall be subject to further Court approval; and *provided further* that copies of all amendments and modifications to and under the DIP Documents, regardless of materiality, shall be provided to the U.S. Trustee and the Creditors' Committee;

(iii)    the incurrence of, and the non-refundable payment to the DIP Agent or the DIP Lenders, as the case may be, of all fees including, without limitation, the Closing Fee and the DIP Fee[5] (each as defined in the Fee Letter (as defined in the DIP Credit Agreement) and, with respect to the DIP Fee, as modified herein) and the Commitment Fee (as described in the DIP Credit Agreement) (which fees shall be fully earned and approved upon entry of this Final Order (except to the extent such fees were already fully earned and approved

---

[5] Notwithstanding anything to the contrary in the Interim Order, the Fee Letter, the DIP Credit Agreement or this Final Order, the DIP Fee shall be reduced from five percent (5%) to four percent (4%).

upon entry of the Interim Order) and shall not be subject to any contest, attack, rejection, recoupment, reduction, defense, counterclaim, offset, subordination, recharacterization, avoidance or other claim, cause of action or other challenge of any nature under the Bankruptcy Code, under applicable non-bankruptcy law or otherwise) and any amounts due (or that may become due) in respect of the indemnification obligations, in each case referred to in the DIP Credit Agreement and the costs and expenses as may be due from time to time, including, without limitation, the fees and expenses of the professionals retained by any of the DIP Agent or DIP Lenders, in each case, as provided for in the DIP Documents, shall be without the need to file retention or fee applications or to provide notice to any party, other than as provided in paragraph 18(c) hereof; and

(iv)     the performance of all other acts required under or in connection with the DIP Documents, including the granting of the DIP Liens and DIP Superpriority Claims and perfection of the DIP Liens as permitted herein and therein.

(c)     Upon execution and delivery of the DIP Documents, the DIP Documents shall constitute valid, binding and unavoidable obligations of the Loan Parties, enforceable against each Loan Party in accordance with the terms of the DIP Documents and this Final Order.  No obligation, payment, transfer or grant of security under the DIP Documents, the Interim Order or this Final Order to the DIP Agent and/or the DIP Lenders shall be stayed, restrained, voidable or recoverable under the Bankruptcy Code or under any applicable law (including, without limitation, under sections 502(d), 548 or 549 of the Bankruptcy Code, any applicable Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act or other similar state statute or common law), or subject to any defense, reduction, setoff, recoupment, recharacterization, subordination, disallowance, impairment, cross-claim, claim or counterclaim.

RLF1 21876487v.3

(d)    No DIP Lender or DIP Agent shall have any obligation or responsibility to monitor any Loan Party's use of the DIP Financing, and each DIP Lender or DIP Agent may rely upon each Loan Party's representations that the amount of DIP Financing requested at any time and the use thereof are in accordance with the requirements of the Interim Order, this Final Order, the DIP Documents, and Bankruptcy Rule 4001(c)(2).

10.    *Application of Proceeds of Collateral.*  As a condition to entry into the DIP Credit Agreement, the extension of credit under the DIP Facility and authorization to use Cash Collateral, the Debtors, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties have agreed that as of and commencing on the date of entry of the Final Order, and to the extent set forth therein, the Debtors shall apply the proceeds of DIP Collateral solely in accordance with the Final Order, the DIP Documents, and the Approved Budget, including, to effect the Roll-Up and *thereafter* to pay accrued interest, principal and other amounts outstanding under the DIP Credit Agreement.

11.    *Carve-Out*

(a)    As used in this Final Order, the term "**Carve-Out**" shall mean the sum of the following:

(i)    Clerk and U.S. Trustee Fees.  All fees required to be paid to the clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code and section 3717 of title 31 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iv) below, and without being subject to any budget) (collectively, the "**Statutory Fees**").

(ii)    Chapter 7 Trustee Fees.  All reasonable and documented fees and expenses incurred by a trustee under section 726(b) of the Bankruptcy Code and allowed by this Court in an amount not to exceed $50,000 (without regard to the notice set forth in (iv) below);

(iii)    Allowed Professional Fees Incurred Prior to Carve-Out Trigger Notice.  To the extent allowed by this Court at any time, whether

20

by interim order, procedural order or otherwise, all accrued and unpaid claims for fees, costs, and expenses incurred by persons or firms retained by the Debtors pursuant to sections 327, 328 or 363 of the Bankruptcy Code (collectively, the "**Debtor Professionals**") and retained by any official committee appointed in the Bankruptcy Cases pursuant to section 1103 of the Bankruptcy Code (collectively, the "**Committee Professionals**" and, together with the Debtors Professionals, the "**Professional Persons**," and the fees, costs and expenses of Professional Persons other than any such financing transaction fees attributed to the Debtors securing the DIP Facility, and the reasonable expenses (other than amounts related to legal fees) of members of the Creditors' Committee incurred in their capacity as such, the "**Professional Fees**"), at any time on or prior to the first business day after delivery by the DIP Agent of a Carve-Out Trigger Notice (as defined below), whether allowed by this Court before or after delivery of a Carve-Out Trigger Notice and without regards to whether such fees, costs, and expenses are provided for in the Approved Budget or were invoiced after the Carve-Out Trigger Date (as defined below). For purposes of the Carve-Out, Professional Fees shall exclude any restructuring, sale, financing transaction fee related to the DIP Facility, success or similar fee of any Professional Person.

(iv)     <u>Allowed Professional Fees Incurred After a Carve-Out Trigger Notice</u>.  Any Professional Fees (excluding any restructuring, sale, financing transaction fee related to the DIP Facility, success or similar fee) of the Professional Persons incurred after the first Business Day following delivery by the DIP Agent of the Carve-Out Trigger Notice (as defined below), to the extent allowed by this Court at any time, whether by interim order, procedural order or otherwise, in an aggregate amount not to exceed $1,000,000 (the amount set forth in this clause (iv) being the "**Post Carve-Out Cap**"), in each case subject to the limits imposed by paragraph 27 of this Final Order; *provided*, that nothing herein shall be construed to impair the ability of any party to object to the allowance of the fees, expenses, reimbursement or compensation described in (i), (ii) or (iii) above on any other grounds.

(b)     Without limiting or altering the scope of sub-paragraph (a) above or sub-paragraph (h) below, on a bi-weekly basis, starting with the first full calendar week following the Petition Date, each Professional Person shall deliver to the DIP Agent a statement setting forth a good-faith estimate of the amount of fees and expenses incurred during the preceding two weeks by such Professional Person (through Saturday of such week, the "**Calculation Date**")

(collectively, "**Estimated Fees and Expenses**"), along with a good-faith estimate of the cumulative total amount of unreimbursed fees and expenses incurred through the applicable Calculation Date and a statement of the amount of such fees and expenses that have been paid to date by the Debtors (each such statement, a "**Bi-Weekly Statement**"); provided, that within two business days of the occurrence of the Carve-Out Trigger Date (as defined herein), each Professional Person shall deliver one additional final statement setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Bi-Weekly Statement has been delivered and concluding on the Carve-Out Trigger Date.

(c)     Upon the occurrence and during the continuance of any Event of Default under the DIP Documents, the DIP Agent may deliver a written notice by email (or other electronic means) invoking the Post Carve-Out Cap (the "**Carve-Out Trigger Notice**") to the Debtors, the Debtors' lead restructuring counsel retained in the Chapter 11 Cases (Latham & Watkins LLP), the U.S. Trustee, and lead counsel to any official committee appointed in the Chapter 11 Cases.  The Carve-Out Trigger Notice shall describe the Event of Default that is alleged to continue under the DIP Documents (or after the payment in full of the DIP Obligations, the Prepetition Revolver Agent describing the reason for terminating the use of Cash Collateral), and shall expressly state that the Post Carve-Out Cap has been invoked, and such notice may be delivered only on and during the continuation of an Event of Default under the DIP Documents and the termination of funding under the DIP Facility (or after the payment in full of the DIP Obligations, the termination of the use of Cash Collateral by the Prepetition Revolver Agent).

(d)    On the day on which a Carve-Out Trigger Notice is received by the Debtors (such date, the "**Carve-Out Trigger Date**"), the Carve-Out Trigger Notice shall constitute a demand to the Debtors to utilize all cash on hand to transfer to the Professional Fees Account (as defined below) cash in an amount equal to all obligations benefitting from the Carve-Out as more fully set forth below.

(e)    On and after the Carve-Out Trigger Date, the DIP Agent shall deposit into a segregated account of the Debtors not subject to the control of the DIP Agent, any DIP Lender or any Prepetition Secured Party (the "**Professional Fees Account**") any cash swept or foreclosed after delivery of the Carve-Out Trigger Notice (including cash received as a result of the sale or other disposition of any assets) until the Professional Fees Account has been fully funded (inclusive of any amounts on deposit therein prior to the issuance of such Carve-Out Trigger Notice) in an amount equal to all obligations benefitting from the Carve-Out. Notwithstanding anything to the contrary in the DIP Documents or this Final Order, following delivery of a Carve-Out Trigger Notice, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties shall not sweep or foreclose on cash (including cash received as a result of the sale or other disposition of any assets) of the Debtors until the Professional Fees Account has been fully funded in an amount equal to all obligations benefitting from the Carve-Out.

(f)    Funds transferred to the Professional Fees Account shall be held in trust for the Professional Persons, the Clerk of the Court and the U.S. Trustee, including with respect to obligations arising out of the Carve-Out.  Funds transferred to the Professional Fees Account shall not be subject to any liens or claims granted herein or under the DIP Documents to the DIP Agent, DIP Lenders or Prepetition Secured Parties or any liens or claims granted as adequate protection, shall not constitute DIP Collateral, and shall not constitute Cash Collateral; provided

that the DIP Collateral shall include the DIP Agent's (on behalf of itself and the DIP Lenders) and the Prepetition Secured Parties' reversionary interest in funds held in the Professional Fees Account, if any, after all allowed Professional Fees benefitting from the Carve-Out have been paid in full in cash pursuant to a final order not subject to appeal.

(g)    Except to the extent expressly provided by further order of this Court, the Debtors may use funds held in the Professional Fees Account only to pay Professional Fees as they become allowed and payable pursuant to any interim or final orders of this Court and to pay the other amounts included in the Carve-Out, and not for any other purpose until all obligations and liabilities benefiting from the Carve-Out are paid and satisfied in full in cash.

(h)    Further, notwithstanding anything to the contrary in this Final Order, the DIP Documents, or the Prepetition Credit Documents, (i) the failure of the Professional Fees Account to be funded in an amount equal to the full amount of the Professional Fees benefitting from the Carve-Out shall not affect the priority of the Carve-Out, (ii) in no way shall the Carve-Out, Professional Fees Account, or the Approved Budget or any of the foregoing (or any good-faith estimate of Professional Fees) be construed as a cap or limitation on the amount of the Professional Fees or the Statutory Fees due and payable by the Debtors or that may be allowed by this Court at any time (whether by interim order, final order, or otherwise), and (iii) the Debtors' authority to use proceeds from the DIP Facility, the DIP Collateral, and/or Cash Collateral on account of and to timely pay Professional Fees and the obligations benefitting from the Carve-Out shall in no way be limited or deemed limited by the Approved Budget or any good-faith estimate of Professional Fees.

(i)    So long as a Carve-Out Trigger Notice has not been delivered as provided above: (i) the Debtors shall be permitted to pay Professional Fees allowed by the Court and

payable under sections 328, 330 or 331 of the Bankruptcy Code or other order of the Court, as the same may become allowed by the Court and due and payable, including on an interim basis; and (ii) such payments shall not reduce, or be deemed to reduce, the Carve-Out.  Without prejudice to the rights of any Professional Person to contest any such objection, nothing in this Final Order shall be construed to impair the ability of any creditor or party in interest to object to any Professional Fees.

(j)        Notwithstanding anything to the contrary in this Final Order, the DIP Documents, or the Prepetition Credit Documents, any and all DIP Obligations, Adequate Protection Claims, and Prepetition Debt (and any and all other claims (as defined in Section 101(5) of the Bankruptcy Code), whenever accrued or arising, of the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties against any Loan Party) and any and all security interests and liens securing the same, in each case, whether arising or granted in connection with postpetition financing, adequate protection, or otherwise, shall be subject to the Carve Out.

(k)        Notwithstanding anything to the contrary in this Final Order or the DIP Documents, the Carve-Out shall not include, apply to or be available for any fees or expenses incurred by any party in connection with (i) the investigation (other than, prior to the Carve-Out Triger Date, as permitted under paragraph 27 of this Final Order), initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation, or assertions of any defense or counterclaim, against any of the DIP Lenders, the DIP Agent, the Prepetition Lenders or the Prepetition Revolver Agent, the Prepetition Noteholders or the Prepetition Note Agent, each in such capacity, and their respective agents, attorneys, advisors or representatives each in such capacity, including challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, and their respective agents, attorneys, advisors

or representatives, including challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset to, the obligations and the liens and security interests granted under the DIP Documents or the Prepetition Credit Documents, including without limitation the Prepetition Revolver Obligations and the Prepetition Note Obligations, (whether in such capacity or otherwise), including, in each case, without limitation, for lender liability or pursuant to section 105, 506(c), 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise, (ii) attempts to modify any of the rights granted to the DIP Lenders, the DIP Agent, the Prepetition Lenders or the Prepetition Revolver Agent, or the Prepetition Noteholders or the Prepetition Note Agent hereunder or under the applicable DIP Documents or Prepetition Credit Documents (other than in connection with an Approved Chapter 11 Plan), (iii) attempts to prevent, hinder or otherwise delay any of the DIP Lenders' or the DIP Agent's assertion, enforcement or realization upon any DIP Collateral or Prepetition Collateral in accordance with the DIP Documents, the Interim Order or this Final Order, other than to seek a determination that an Event of Default has not occurred or is not continuing, or (iv) paying any amount on account of any claims arising before the commencement of the Chapter 11 Cases unless such payments are approved by an order of the Court and permitted under the DIP Documents (including the Approved Budget).

12.    *DIP Superpriority Claims.*  The DIP Agent and the DIP Lenders are hereby granted, against each of the Debtors on a joint and several basis, pursuant to, and to the extent provided by, section 364(c)(1) of the Bankruptcy Code, an allowed superpriority administrative expense claim for the New Money DIP (without the need to file any proof of claim) with priority over any and all administrative expenses of the kind specified in sections 503(b) and 507(b) (including the Prepetition 507(b) Claim (as defined below)) of the Bankruptcy Code, including

any and all administrative expenses or other claims arising under sections 105, 328, 330, 331, 365, 503(b), 506(c), 507(a)(other than section 507(a)(1), 507(b), 1113 or 1114 of the Bankruptcy Code (including the Adequate Protection Obligations (as defined below)), whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment, which allowed claims (the "**DIP Superpriority Claims**") shall for purposes of section 1129(a)(9)(A) of the Bankruptcy Code be considered administrative expenses allowed under section 503(b) of the Bankruptcy Code, and which DIP Superpriority Claims shall be payable from and have recourse to all pre- and postpetition property of the Loan Parties and all proceeds thereof (excluding the Loan Parties' claims and causes of action under sections 502(d), 544, 545, 547, 548 and 550 of the Bankruptcy Code, or any other avoidance actions under the Bankruptcy Code (collectively, "**Avoidance Actions**"), and any proceeds or property recovered, unencumbered or otherwise from Avoidance Actions, whether by judgment, settlement or otherwise ("**Avoidance Proceeds**")), subject only to payment in full in cash of the Carve-Out. The DIP Superpriority Claims shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final Order or any provision hereof is vacated, reversed or modified, on appeal or otherwise.

13.     *DIP Liens*.

(a)     As security for the DIP Obligations, effective and perfected upon the date of the Interim Order and without the necessity of the execution, recordation of filings by the Loan Parties of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, any notation of certificates of title for a titled good, or the possession or control by the DIP Agent of, or over, any DIP Collateral, the following security interests and liens are hereby granted to the DIP Agent for its own benefit and

the benefit of the DIP Lenders (all property identified in clauses (i), (ii) and (iii) below being collectively referred to as the "**DIP Collateral**"), subject only to payment in full in cash of the Carve-Out (all such liens and security interests granted to the DIP Agent, for its benefit and for the benefit of the DIP Lenders, pursuant to this Final Order and the DIP Documents, the "**DIP Liens**"):

        (i)     <u>DIP First Lien on Unencumbered Assets</u>.  Pursuant to section 364(c)(2) of the Bankruptcy Code and solely with respect to the New Money DIP, a valid, binding, continuing, enforceable, fully-perfected first priority senior security interest in and lien upon all tangible and intangible pre- and postpetition property of the Loan Parties, whether existing on the Petition Date or thereafter acquired, that, on or as of the Petition Date (including pursuant to Section 546(b) of the Bankruptcy Code), is not subject to a valid, perfected and non-avoidable lien (collectively, "**Unencumbered Assets**"), including, without limitation, any and all unencumbered cash of the Loan Parties and any investment of such cash, commercial tort claims (including any proceeds of any such commercial tort claims), claims and proceeds under directors and officers liabilities insurance policies, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date, contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, chattel paper, interests in leaseholds, real properties, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock of subsidiaries, wherever located, and the proceeds, products, rents and profits of the foregoing, whether arising under section 552(b) of the Bankruptcy Code or otherwise, of all the foregoing, in each case other than the Avoidance Actions and Avoidance Proceeds;

(ii)     <u>DIP Priming Liens on Prepetition Collateral</u>.  Pursuant to section 364(d)(1) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected first priority senior priming security interest in and lien upon all pre- and postpetition property of each Loan Party (including, without limitation, any and all cash and cash collateral and any investment of such cash and cash collateral, inventory, accounts receivable, other rights to payment whether arising before or after the Petition Date (including, without limitation, post-petition intercompany claims against the Loan Parties and their non-Debtor affiliates), contracts, properties, plants, fixtures, machinery, equipment, general intangibles, documents, instruments, securities, chattel paper, interests in leaseholds, real properties, deposit accounts, patents, copyrights, trademarks, trade names, rights under license agreements and other intellectual property, capital stock of subsidiaries, wherever located, and the proceeds, products, rents and profits of the foregoing), whether now existing or hereafter acquired, that is subject to the Prepetition Liens (other than Prepetition Liens on assets that constitute Unencumbered Assets due to avoidance of such liens), which lien shall be senior in all respects to such Prepetition Liens.  Such security interests and liens shall be senior in all respects to the interests in such property of the Prepetition Secured Parties arising from current and future liens of the Prepetition Secured Parties (including, without limitation, the Adequate Protection Liens granted hereunder);

(iii)     <u>DIP Liens Junior to Certain Other Liens</u>.  Pursuant to section 364(c)(3) of the Bankruptcy Code, a valid, binding, continuing, enforceable, fully-perfected junior security interest in and lien upon all tangible and intangible pre- and postpetition property of each Loan Party that, on or as of the Petition Date (including pursuant to Section 546(b) of the Bankruptcy Code), is subject to valid, perfected and unavoidable liens senior to the Prepetition Liens in existence immediately prior to the Petition Date (the "**Senior Liens**"), if any; *provided*

that, nothing in the foregoing shall limit the rights of the DIP Secured Parties under the DIP Documents to the extent such Senior Liens are not permitted thereunder; *provided further* that nothing in this Final Order will be construed as altering or impairing the Senior Liens; and *provided further* that, the DIP Liens shall not prime any valid and enforceable rights of recoupment or setoff asserted by Marabou Energy Management, LLC and  Marabou Superior Pipeline, LLC.

(iv)     <u>DIP Liens Senior to Certain Other Liens</u>.  The DIP Liens shall not be (a) subject or subordinate to or made *pari passu* with (1) any lien or security interest that is avoided and preserved for the benefit of the Loan Parties and their estates under section 551 of the Bankruptcy Code, (2) unless otherwise provided for in the DIP Documents or in this Final Order, or unless otherwise required by Section 546(b) of the Bankruptcy Code or applicable non-bankruptcy law, any liens or security interests arising after the Petition Date, including, without limitation, any liens or security interests granted in favor of any federal, state, municipal or other governmental unit (including any regulatory body), commission, board or court for any liability of the Loan Parties, or (3) any intercompany or affiliate liens or security interests of the Loan Parties; or (b) subordinated to or made *pari passu* with any other lien or security interest under section 363 or 364 of the Bankruptcy Code.

(v)     Notwithstanding anything to the contrary in the Interim Order or this Final Order, (a) nothing in the Interim Order or this Final Order grants liens (including the DIP Liens and the Adequate Protection Liens) on Avoidance Actions or Avoidance Proceeds against any party and (b) the claims granted to the DIP Secured Parties and the Prepetition Secured Parties pursuant to the terms of the Interim Order and this Final Order (including the

DIP Superpriority Claims, Adequate Protection Claims, and the Prepetition 507(b) Claim) shall not have recourse to, or be payable from, Avoidance Actions and Avoidance Proceeds.

14.     *Protection of DIP Lenders' Rights.*

(a)     So long as there are any DIP Obligations outstanding or the DIP Lenders have any outstanding Commitments (as defined in the DIP Credit Agreement) under the DIP Credit Agreement, the Prepetition Secured Parties shall: (i) have no right to and shall take no action to foreclose upon, or recover in connection with, the liens granted thereto pursuant to the Prepetition Credit Documents, the Interim Order or this Final Order, or otherwise seek to exercise or enforce any rights or remedies against such DIP Collateral or the Adequate Protection Liens; (ii) be deemed to have consented to any transfer, disposition or sale of, or release of liens on, such DIP Collateral (but not any proceeds of such transfer, disposition or sale to the extent remaining after payment in cash in full of the DIP Obligations and termination of the Commitments), to the extent such transfer, disposition, sale or release is authorized under the DIP Documents; (iii) not file any further financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or otherwise take any action to perfect their security interests in such DIP Collateral unless, solely as to this clause (iii), the DIP Agent or the DIP Lenders file financing statements or other documents to perfect the liens granted pursuant to the Interim Order or this Final Order, or as may be required by applicable state law to continue the perfection of valid and unavoidable liens or security interests as of the Petition Date; and (iv) at the request of the DIP Agent, deliver or cause to be delivered, at the Loan Parties' cost and expense, any termination statements, releases and/or assignments in favor of the DIP Agent or the DIP Lenders or other documents necessary to effectuate and/or evidence the

release, termination and/or assignment of liens on any portion of such DIP Collateral subject to any sale or disposition.

(b)    To the extent any Prepetition Secured Party has possession of any Prepetition Collateral or DIP Collateral or has control with respect to any Prepetition Collateral or DIP Collateral, or has been noted as secured party on any certificate of title for a titled good constituting Prepetition Collateral or DIP Collateral, then such Prepetition Secured Party shall be deemed to maintain such possession or notation or exercise such control as a gratuitous bailee and/or gratuitous agent for perfection for the benefit of the DIP Agent and the DIP Lenders, and the Prepetition Agents shall comply with the instructions of the DIP Agent with respect to the exercise of such control.

(c)    Any proceeds of Prepetition Collateral received by the Prepetition Agents or any Prepetition Secured Party in connection with the exercise of any right or remedy (including setoff) relating to the Prepetition Collateral or otherwise received by the Prepetition Agents shall be segregated and held in trust for the benefit of and, forthwith paid over to the DIP Agent for the benefit of the DIP Secured Parties in the same form as received, with any necessary endorsements, or as a court of competent jurisdiction may otherwise direct.  The DIP Agent is hereby authorized to make any such endorsements as agent for each of the Prepetition Agents or any such Prepetition Secured Party.  This authorization is coupled with an interest and is irrevocable.

(d)    Upon the occurrence and during the continuance of an Event of Default under the DIP Documents, the DIP Required Lenders may, in their sole and absolute discretion, take any or all of the following actions: (i) immediately (1) deliver a notice of an Event of Default, (2) terminate any pending Commitments, (3) terminate the DIP Facility, and (4)

32

terminate the use of Cash Collateral; (ii) exercise their unqualified right to credit bid up pursuant to section 363(k) of the Bankruptcy Code to the full amount of the outstanding DIP Obligations (including any accrued interest), which credit bid may, with the consent of the applicable Prepetition Agent, incorporate a credit bid of the Prepetition Obligations, in any sale of the DIP Collateral (or any part thereof), without the need for further Court order authorizing the same, and whether such sale is effectuated through section 363(k) or 1129 of the Bankruptcy Code, by a chapter 7 trustee under Section 725 of the Bankruptcy Code, or otherwise, and (iii) upon five (5) business days' written notice from the DIP Required Lenders (the "**Remedies Notice Period**") (which shall run concurrently with any notice required to be provided under the DIP Documents) via email to lead counsel to the Debtors (Latham & Watkins LLP), lead counsel to the Creditors' Committee (Kilpatrick Townsend & Stockton LLP), and the U.S. Trustee to declare, in their sole and absolute discretion, that the automatic stay of Section 362 of the Bankruptcy Code shall be terminated automatically without further order of this Court, without the need for filing any motion for relief from the automatic stay or any other pleading, for the limited purpose of permitting the DIP Lenders to do any of the following:  (1) foreclose on the DIP Collateral; (2) enforce all of the guaranty rights; (3) charge the default rate of interest on the DIP Loans; and (4) declare the principal of and accrued interest, fees, and expenses constituting the obligations under the DIP Facility to be due and payable.  During the Remedies Notice Period, the Debtors, the U.S. Trustee and/or the Creditors' Committee shall have the right to seek an emergency hearing with the Court.  The DIP Agent and the DIP Lenders shall not exercise any of the remedies provided for in this subparagraph (d) unless and until the Court either denies the request for an emergency hearing or resolves the issues brought before it in any such emergency hearing by the Debtors, the U.S. Trustee and/or the Creditors' Committee.  In no

event shall the DIP Agent, the DIP Lenders or the Prepetition Secured Parties be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or the Prepetition Collateral, as applicable; *provided, however,* that notwithstanding anything to the contrary in the Interim Order or this Final Order, the DIP Agent and the Prepetition Agents, as applicable, shall satisfy the New Money DIP and claims for Diminution in Collateral Value (as defined below), if any, first from assets other than the Unencumbered Assets.  Further, in no event shall the "equities of the case" exception in section 552(b) of the Bankruptcy Code apply to the secured claims of the Prepetition Secured Parties.

(e)    No rights, protections or remedies of the DIP Agent or the DIP Lenders granted by the provisions of this Final Order or the DIP Documents shall be limited, modified or impaired in any way by: (i) any actual or purported withdrawal of the consent of any party to the Loan Parties' authority to continue to use Cash Collateral; (ii) any actual or purported termination of the Loan Parties' authority to continue to use Cash Collateral; or (iii) except to the extent expressly set forth therein, the terms of any other order or stipulation related to the Loan Parties' continued use of Cash Collateral or the provision of adequate protection to any party.

15.    *Limitation on Charging Expenses Against Collateral.*  Except to the extent of the Carve-Out, no costs or expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral (including Cash Collateral) pursuant to section 506(c) of the Bankruptcy Code or any similar principle of law, without the prior written consent of the DIP Agent, the DIP Lenders, the Prepetition Revolver Agent, the Prepetition Lenders, the Prepetition Note Agent, or the Prepetition Noteholders, as applicable, and no such consent shall be implied from any other

34

action, inaction, or acquiescence by the DIP Agent, the DIP Lenders, the Prepetition Revolver Agent, the Prepetition Lenders, the Prepetition Note Agent, or the Prepetition Noteholders and nothing contained in this Final Order shall be deemed to be a consent by the DIP Agent, the DIP Lenders, the Prepetition Revolver Agent, the Prepetition Lenders, the Prepetition Note Agent, or the Prepetition Noteholders to any charge, lien, assessment or claim against the DIP Collateral under section 506(c) of the Bankruptcy Code or otherwise.

16.     *Payments Free and Clear*.  Subject to the Carve-Out and the Challenge Period set forth in Paragraph 26 in connection with any Roll-Up Loans, any and all payments or proceeds remitted to the DIP Agent on behalf of the DIP Lenders pursuant to and in accordance with the provisions of the Interim Order or this Final Order or the DIP Documents or any subsequent order of the Court shall be irrevocable, received free and clear of any claim, charge, assessment or other liability, including without limitation, any such claim or charge arising out of or based on, directly or indirectly, sections 506(c) or 552(b) of the Bankruptcy Code, whether asserted or assessed by, through or on behalf of the Debtors.

17.     *Use of Cash Collateral*.  The Loan Parties are hereby authorized, subject to the terms and conditions of this Final Order, to use all Cash Collateral and the Prepetition Secured Parties are directed promptly to turn over to the Loan Parties all Cash Collateral received or held by them; *provided* that (a) the Prepetition Secured Parties are granted the adequate protection as hereinafter set forth and (b) except on the terms and conditions of this Final Order, the Loan Parties shall be enjoined and prohibited from at any times using the Cash Collateral absent further order of the Court.

18.     *Adequate Protection of Prepetition Secured Parties*.  The Prepetition Secured Parties are entitled, pursuant to sections 361, 362, 363(e), 364(d)(1) and 507 of the Bankruptcy

Code, to adequate protection of their interests in all Prepetition Collateral, including the Cash Collateral, in an amount equal to the aggregate diminution in the value of the Prepetition Secured Parties' interests in the Prepetition Collateral (including Cash Collateral) from and after the Petition Date, if any, for any reason provided for under the Bankruptcy Code ("**Diminution in Collateral Value**"), including, the sale, lease or use by the Loan Parties of the Prepetition Collateral, the priming of the Prepetition Secured Parties' security interests and liens on the Prepetition Collateral by the DIP Agent and the DIP Lenders pursuant to the DIP Documents, the Interim Order, and this Final Order, and the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code (the "**Adequate Protection Claims**").   In consideration of the foregoing, to the extent of any Diminution in Collateral Value, each of the Prepetition Revolver Agent, for the benefit of the Prepetition Lenders, and the Prepetition Note Agent, for the benefit of the Prepetition Noteholders, are hereby granted, as applicable, the following (collectively, the "**Adequate Protection Obligations**"):

(a)      <u>Prepetition Adequate Protection Liens</u>.  The Prepetition Revolver Agent (for itself and for the benefit of the Prepetition Lenders) is hereby granted (effective and perfected upon the date of this Final Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), in the amount of the Prepetition Lenders' Adequate Protection Claim, a valid, perfected replacement security interest in and lien upon all of the DIP Collateral including, without limitation, Unencumbered Assets, excluding the Avoidance Actions and the Avoidance Proceeds, in each case subject and subordinate only to (i) the DIP Liens and any liens to which the DIP Liens are junior, including the Senior Liens, if any, and (ii) the payment in full in cash of the Carve-Out (the "**Prepetition Lenders Adequate Protection Liens**").  The Prepetition Note

Agent (for itself and for the benefit of the Prepetition Noteholders) is hereby granted (effective and perfected upon the date of this Final Order and without the necessity of the execution of any mortgages, security agreements, pledge agreements, financing statements or other agreements), in the amount of the Prepetition Noteholders' Adequate Protection Claim, a valid, perfected replacement security interest in and lien upon all of the DIP Collateral including, without limitation, Unencumbered Assets and the Avoidance Proceeds, in each case subject and subordinate only to (i) the DIP Liens, (ii) any prepetition liens that are senior in priority to the Prepetition Note Liens, including the Prepetition Revolver Liens and the Senior Liens, if any, (iii) the Prepetition Lenders Adequate Protection Liens, and (iv) the payment in full in cash of the Carve-Out (collectively, the "**Prepetition Note Adequate Protection Liens**" and, together with the Prepetition Lenders Adequate Protection Liens, the "**Adequate Protection Liens**").  For the avoidance of doubt, the Prepetition Note Adequate Protection Liens shall be subordinated to the Prepetition Lenders Adequate Protection Liens on the same basis as all other Prepetition Liens securing the claims of the Prepetition Noteholders are so subordinated to the liens securing the Prepetition Revolver Obligations owed to the Prepetition Lenders.

(b)     Prepetition Section 507(b) Claim.  The Prepetition Revolver Agent (for itself and the benefit of the Prepetition Lenders) and the Prepetition Note Agent (for itself and the benefit of the Prepetition Noteholders) are hereby granted, subject to the payment in full in cash of the Carve-Out, an allowed superpriority administrative expense claim as provided for in section 507(b) of the Bankruptcy Code in the amount of the Adequate Protection Claims having, except as set forth in this Final Order, priority in payment over any and all administrative expenses of the kind specified in section 507(b) of the Bankruptcy Code (the "**Prepetition 507(b) Claim**"), which Prepetition 507(b) Claim shall have recourse to and be payable from all

of the DIP Collateral in accordance with the priorities set forth herein, excluding the Avoidance Actions and the Avoidance Proceeds. The Prepetition 507(b) Claim shall be subject and subordinate to the payment in full in cash of the Carve-Out and the DIP Superpriority Claims. Except to the extent expressly set forth in this Final Order or the DIP Credit Agreement, the Prepetition Secured Parties shall not receive or retain any payments, property or other amounts in respect of the Prepetition 507(b) Claim unless and until the DIP Obligations (other than contingent indemnification obligations as to which no claim has been asserted) and any claims having a priority superior to or *pari passu* with the DIP Superpriority Claims (including claims that benefit from the Carve-Out) have indefeasibly been paid in cash in full and all Commitments have been terminated.

(c)     DIP Secured Parties' and Prepetition Secured Parties' Fees and Expenses. Without duplication of amounts required to be paid pursuant to the DIP Documents, (i) upon entry of this Final Order, the Loan Parties shall pay in cash all fees, expenses, and disbursements payable to the Prepetition Secured Parties, including all fees, expenses, and disbursements payable to the Prepetition Agents and all professional fees and expenses of the Prepetition Secured Parties (including the fees and expenses of Weil, Gotshal & Manges LLP and Pachulski, Stang, Ziehl & Jones LLP, in each case, whether accrued prior to or after the Petition Date). The post-petition payment of the fees, expenses and disbursements set forth in the foregoing sentence, along with the professional fees and expenses of the DIP Secured Parties, shall be made within ten (10) days (which time period may be extended by the applicable professional) upon the receipt by the Debtors, the Creditors' Committee, and the U.S. Trustee (the "**Review Period**") of invoices therefor (the "**Invoiced Fees**") and without the necessity of filing formal fee applications, including such amounts arising before or after the Petition Date. The invoices

for such Invoiced Fees shall include a general description of the nature of the matters worked on, a list of professionals who worked on the matter, their hourly rate (if such professionals bill at an hourly rate), the number of hours billed (except for financial advisors compensated on other than an hourly basis), and with respect to the invoices of law firms, the year of law school graduation for each attorney; *provided*, *however*, that any such invoice: (i) may be redacted to protect privileged, confidential or proprietary information, provided, however that the U.S. Trustee reserves the right to seek to obtain unredacted copies of such invoices, and (ii) shall not be required to contain individual time detail, provided, however, that the U.S. Trustee reserves the right to seek copies of invoices containing the detailed time entries of any professional. The Debtors, the Creditors' Committee, and the U.S. Trustee may object to any portion of the Invoiced Fees (the "**Disputed Invoiced Fees**") within the Review Period by written notice to the applicable professional or by filing with the Court a motion or other pleading, on at least ten (10) days' prior written notice to the applicable Prepetition Secured Party and the applicable professional of any hearing on such motion or other pleading, setting forth the specific objections to the Disputed Invoiced Fees in reasonable narrative detail and the bases for such objections; *provided*, that payment of any undisputed portion of Invoiced Fees shall be paid within the time frame set forth above and shall not be delayed based on any objections thereto; *provided, further,* that the applicable parties shall endeavor in good faith to consensually resolve any such dispute prior to the filing of any such motion or pleading.

(d)    <u>Prepetition Secured Parties' Adequate Protection Payment and Interest Accrual</u>. Subject to the Carve Out, as further adequate protection, the Debtors shall provide adequate protection to the applicable Prepetition Secured Parties in the form of payment in cash (and as to fees and expenses, without the need for the filing of a formal fee application) of (a) to

the Prepetition Revolver Agent, on behalf of the Prepetition Lenders, all accrued and unpaid interest and fees at the "Default Rate" and as provided under the Prepetition Revolving Credit Agreement (*provided* that, interest shall cease to accrue under the Prepetition Revolving Credit Agreement on any Roll-Up Loans, and such Roll-Up Loans shall accrue interest under and in accordance with the terms of the DIP Credit Agreement), and (b) immediately upon entry of this Final Order, to the Prepetition Secured Parties, payment of the reasonable and documented fees, out-of-pocket expenses, and disbursements (including, without limitation, the reasonable and documented fees, out-of-pocket expenses, and disbursements of counsel, financial advisors, auditors, third party consultants, and other vendors) incurred by the Prepetition Secured Parties, whether arising prior to or after the Petition Date, subject to the procedures set forth in paragraph 18(c) above.

(e)    Information Rights.  The Debtors shall promptly provide the Prepetition Revolver Agent, on behalf of itself and the Prepetition Lenders, the Prepetition Note Agent, on behalf of itself and the Prepetition Noteholders, and the Creditors' Committee with all required written financial reporting and other periodic reporting that is required to be provided to the DIP Agent or the DIP Lenders under the DIP Credit Agreement.

19.    *Adequate Protection Finding*.  Subject to the Carve Out, nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to the Prepetition Secured Parties hereunder is insufficient to compensate for any diminution in value of their respective interests in the Collateral during the Chapter 11 Cases.   Under the circumstances and given that the above-described adequate protection is consistent with the Bankruptcy Code, including section 506(b) thereof, the Court

finds that the adequate protection provided herein is reasonable and sufficient to protect the interests of the Prepetition Secured Parties.

20.     *Consent to Adequate Protection; Right to Seek Additional Adequate Protection; No Admission*.   The Prepetition Secured Parties have consented to the Adequate Protection Obligations, the priming of the Prepetition Liens by the DIP Liens, and the use of Cash Collateral; *provided*, however, that such consent is expressly conditioned upon the entry of this Final Order, and such consent shall not be deemed to extend to any other Cash Collateral usage or other replacement financing or debtor-in-possession financing other than the DIP Facility provided under the DIP Documents; and *provided*, *further*, that such consent shall be of no force and effect in the event this Final Order is not entered or is entered and subsequently reversed, modified, stayed, or amended (unless such reversal, modification, stay, or amendment is acceptable to the Prepetition Revolver Agent, the Prepetition Lenders, the Prepetition Note Agent, and the Prepetition Noteholders) or the DIP Documents and DIP Facility as set forth herein are not approved.  This Final Order: (i) is without prejudice to, and does not constitute a waiver of, expressly or implicitly, the rights of each of the Prepetition Secured Parties to request additional or alternative forms of adequate protection from the Loan Parties, and the Loan Parties' and any other party in interest's right to object to such requests are hereby preserved; and (ii) shall not be deemed an admission, acknowledgement, or stipulation by the Prepetition Secured Parties that the Prepetition Secured Parties are in fact adequately protected by the terms and conditions of this Final Order or otherwise.

21.     *Perfection of DIP Liens and Adequate Protection Liens.*

(a)     In addition to the authority granted in the Interim Order, the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties are hereby authorized, but not required, to

file or record (and to execute in the name of the Loan Parties, as their true and lawful attorneys, with full power of substitution, to the maximum extent permitted by law) financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession of or control over cash or securities, or take any other action in order to validate and perfect the liens and security interests granted to them under the DIP Documents or this Final Order.  Whether or not the DIP Agent, on behalf of the DIP Lenders or the Prepetition Secured Parties shall, in its sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession of or control over any cash or securities, or otherwise confirm perfection of the liens and security interests granted to them hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of this Final Order (subject to paragraph 26 below).  Upon the request of the DIP Agent, each of the Prepetition Secured Parties and the Loan Parties, without any further consent of any party, is authorized (in the case of the Loan Parties) and directed (in the case of the Prepetition Secured Parties) to take, execute, deliver and file such instruments (in each case, without representation or warranty of any kind) to enable the DIP Agent to further validate, perfect, preserve and enforce the DIP Liens.  All such documents will be deemed to have been recorded and filed as of the Petition Date.

(b)      A certified copy of this Final Order may, in the discretion of the DIP Agent, be filed with or recorded in filing or recording offices in addition to or in lieu of such financing statements, mortgages, notices of lien or similar instruments, and all filing offices are authorized to accept such certified copy of this Final Order for filing and/or recording, as applicable.  The automatic stay of section 362(a) of the Bankruptcy Code is hereby vacated and

modified to the extent necessary to permit the DIP Agent to take all actions, as applicable, referenced in this subparagraph (b) and the immediately preceding subparagraph (a).

(c)    Notwithstanding anything to the contrary in the Motion, the DIP Documents or this Final Order, for purposes of this Final Order, in no event shall the DIP Collateral include, or the DIP Liens or Adequate Protection Liens attach to, any lease, license, contract or agreement or other property right to which any Debtor is a party, or any such relevant Debtor's rights or interests thereunder, if and for so long as the grant of such security interest would constitute or result in: (x) the abandonment, invalidation, unenforceability or other impairment of any right, title or interest of any Debtor therein or (y) in a breach or termination pursuant to the terms of, or a default under, any such lease, license, contract or agreement or other property right pursuant to any provision thereof, unless, in the case of each of clauses (x) and (y), the applicable provision is rendered ineffective by applicable non-bankruptcy law or the Bankruptcy Code (such leases, licenses, contracts or agreements or other property rights are collectively referred to as the "**Specified Contracts**"); *provided* that the DIP Liens, Prepetition Lenders Adequate Protection Liens, the DIP Superpriority Claims, and the Prepetition 507(b) Claim shall in all events attach to and have recourse from all proceeds, products, offspring or profits from any and all Specified Contracts (including from the sale, transfer, disposition or monetization thereof).

22.    *Proceeds of Subsequent Financing*.  If the Debtors, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in these Chapter 11 Cases or any successor Cases, shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c) or 364(d) in violation of the DIP Documents at any time prior to the repayment in full in cash of all DIP Obligations and the

termination of the DIP Lenders' obligation to extend credit under the DIP Facility, including subsequent to the confirmation of any plan with respect to the Debtors and the Debtors' estates, and such financing is secured by any DIP Collateral, then all of the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent, for the benefit of itself and the DIP Lenders, to be applied as set forth the DIP Documents and this Final Order.

23.     *Disposition of DIP Collateral; Rights of DIP Agent and DIP Lenders*.   The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any DIP Collateral without the prior written consent of the DIP Agent (and no such consent shall be implied, from any other action, inaction or acquiescence), except as expressly permitted in the DIP Documents.

24.     *Preservation of Rights Granted Under This Final Order.*

(a)     Other than the Carve-Out and other claims and liens expressly granted or permitted by this Final Order and the DIP Documents, no claim or lien having a priority superior to or *pari passu* with those granted by this Final Order to the DIP Agent and the DIP Lenders or the Prepetition Secured Parties shall be permitted while any of the DIP Obligations or the Adequate Protection Obligations remain outstanding.   No postpetition lien or security interest shall be granted by the Debtors to any other party in any of the Specified Contracts without first granting such lien or security interest to the DIP Agent, the DIP Lenders or the Prepetition Secured Parties (solely with respect to the Adequate Protection Obligations), as applicable.

(b)     Notwithstanding any order that may be entered dismissing any of the Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise:   (i) the DIP Superpriority Claims, the Prepetition 507(b) Claim, the DIP Liens, and the Adequate Protection Liens shall continue in full force and effect and shall maintain their priorities as provided in this Final Order until all DIP Obligations and Adequate Protection Obligations shall have been

indefeasibly paid in full in cash (and such DIP Superpriority Claims, Prepetition 507(b) Claim, DIP Liens, and Adequate Protection Liens shall, notwithstanding such dismissal, remain binding on all parties in interest); (ii) the other rights granted by this Final Order shall not be affected; and (iii) to the greatest extent allowed by applicable law, this Court shall retain jurisdiction, notwithstanding such dismissal, for the purposes of enforcing the claims, liens and security interests referred to in this paragraph and otherwise in this Final Order.

(c)     If any or all of the provisions of this Final Order are hereafter reversed, modified, vacated or stayed, the DIP Agent, the DIP Lenders and the Prepetition Secured Parties shall be entitled to all of the rights, remedies, protections, and benefits granted under section 364(e) of the Bankruptcy Code.

(d)     Except as expressly provided in this Final Order or in the DIP Documents, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, and the Adequate Protection Obligations and all other rights and remedies of the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties granted by the provisions of this Final Order and the DIP Documents shall survive, and shall not be modified, impaired or discharged by: (i) the entry of an order converting any of the Chapter 11 Cases to a case under chapter 7, dismissing any of the Chapter 11 Cases, terminating the joint administration of the Chapter 11 Cases or by any other act or omission of the Debtors; (ii) the entry of an order approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Documents); or (iii) the entry of an order confirming a chapter 11 plan in any of the Chapter 11 Cases and, pursuant to section 1141(d)(4) of the Bankruptcy Code, the Loan Parties have waived any discharge as to any remaining DIP Obligations or Adequate Protection Obligations.  The terms and provisions of this Final Order and the DIP Documents shall continue in these Chapter

11 Cases, in any successor cases if these Chapter 11 Cases cease to be jointly administered and in any superseding chapter 7 cases under the Bankruptcy Code, and the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, and the Adequate Protection Obligations and all other rights and remedies of the DIP Agent, the DIP Lenders, and the Prepetition Secured Parties granted by the provisions of this Final Order and the DIP Documents shall continue in full force and effect until the DIP Obligations are indefeasibly paid in full in cash, as set forth herein and in the DIP Documents, and the Commitments have been terminated.

25.    *Cash Management*.    Unless otherwise agreed by the DIP Agent or otherwise permitted by the DIP Documents, and pursuant to further order of the Court, the Debtors shall maintain their cash management arrangements in all material respects in a manner consistent with that described in the applicable "first-day" order and the related motion seeking authorization to continue the Debtors' cash management arrangements.

26.    *Effect of Stipulations on Third Parties*.    The Debtors' stipulations, admissions, agreements, and releases contained in paragraphs 6 and 7 of this Final Order, shall be binding upon the Debtors and any successor thereto in all circumstances and for all purposes.    The Debtors' stipulations, admissions, agreements and releases contained in paragraphs 6 and 7 of this Final Order, shall be binding upon all other parties in interest, in all circumstances and for all purposes unless: (a) a party in interest, including but not limited to any Creditors' Committee appointed in these cases, with requisite standing, has timely filed an adversary proceeding or contested matter (subject to the limitations contained herein, including, *inter alia*, in this paragraph 26) by no later than (i) (x) with respect to parties in interest (other than the Creditors' Committee) with requisite standing, 75 calendar days after entry of this Final Order and (y) with respect to the Creditors' Committee, 75 calendar days after the appointment of the Creditors'

Committee, if any, (ii) any such later date as has been agreed to, in writing, by the Prepetition Revolver Agent (with the consent of the Required Lenders (as defined in the Prepetition Revolving Credit Agreement)) or the Prepetition Note Agent, as applicable, and (iii) any such later date as has been ordered by the Court for cause upon a motion filed and served within any applicable period of time set forth in this paragraph (the time period established by the foregoing clauses (i), (ii), and (iii), the "**Challenge Period**"), *provided*, *however*, that if the case converts to a Chapter 7, or if a Chapter 11 trustee is appointed, prior to the end of the Challenge Period, the Challenge Period shall be extended for the Chapter 7 or Chapter 11 trustee to the later of (i) the time that is remaining in the Challenge Period plus 10 days and (ii) such date designated by the Court, (A) objecting to or challenging the amount, validity, perfection, enforceability, priority or extent of any of the Prepetition Debt or the Prepetition Liens, or (B) otherwise asserting or prosecuting any action for preferences, fraudulent transfers or conveyances, other avoidance power claims or any other claims, counterclaims or causes of action, objections, contests or defenses (collectively, the "**Challenges**") against any of the Prepetition Secured Parties or their respective subsidiaries, officers, directors, managers, principals, employees, agents, financial advisors, attorneys, accountants, investment bankers, consultants, representatives and other professionals and the respective successors and assigns thereof, in each case in their respective capacity as such (each a "**Representative**" and, collectively, the "**Representatives**") in connection with matters related to the Prepetition Credit Documents, the Prepetition Debt, the Prepetition Liens and the Prepetition Collateral; and (b) there is a final non-appealable order in favor of the plaintiff sustaining any such Challenge in any such timely filed adversary proceeding or contested matter; *provided*, *however*, that any pleadings filed in connection with any Challenge shall set forth with specificity the basis for such challenge or claim and any

challenges or claims not so specified prior to the expiration of the Challenge Period shall be deemed forever, waived, released and barred.  Notwithstanding anything to the contrary in the Interim Order or this Final Order, if, during the Challenge Period, the Creditors' Committee or any other party in interest files a motion seeking standing to file a Challenge with a draft complaint identifying and describing all such Challenge(s), the Challenge Period will be tolled solely with respect to the Challenges asserted in such draft complaint and solely with respect to the party asserting such Challenges until the earlier of (i) two (2) business days subsequent to the date of entry of an order granting the Creditors' Committee or other party in interest standing to file any such Challenge(s) described in the complaint, and (ii) entry of an order denying such motion; *provided, further,* that such extension shall only apply to those Challenges asserted in the draft complaint that this Court has specifically found that the Creditors' Committee or other party in interest has standing to assert; *provided, further* that the Challenge Period shall not be tolled for more than thirty (30) days from the filing of the Creditors' Committee's or other party in interest's motion seeking standing to file a Challenge, but allowing for additional time as necessary to accommodate the Court's schedule.  If no such Challenge is timely and properly filed during the Challenge Period or the Court does not rule in favor of the plaintiff in any such proceeding then: (a) the Debtors' stipulations, admissions, agreements and releases contained in paragraphs 6 and 7 of this Final Order, shall be binding on all parties in interest, including, without limitation, the Creditors' Committee; (b) the obligations of the Loan Parties under the Prepetition Credit Documents, including the Prepetition Debt, shall constitute allowed claims not subject to defense, claim, counterclaim, recharacterization, subordination, offset or avoidance, for all purposes in the Chapter 11 Cases, and any subsequent chapter 7 case(s), other than to payment in full in cash of the Carve-Out; (c) the Prepetition Liens on the Prepetition Collateral

shall be deemed to have been, as of the Petition Date, legal, valid, binding, perfected, security interests and liens on the Prepetition Collateral, not subject to recharacterization, subordination, avoidance or other defense, other than to payment in full in cash of the Carve-Out; and (d) the Prepetition Debt and the Prepetition Liens on the Prepetition Collateral shall not be subject to any other or further claim or challenge by the Creditors' Committee, any non-statutory committees appointed or formed in the Chapter 11 Cases or any other party in interest acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors) and any defenses, claims, causes of action, counterclaims and offsets by the Creditors' Committee, any non-statutory committees appointed or formed in the Chapter 11 Cases, or any other party acting or seeking to act on behalf of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any chapter 7 trustee or chapter 11 trustee or examiner appointed or elected for any of the Debtors), whether arising under the Bankruptcy Code or otherwise, against any of the Prepetition Secured Parties and their Representatives arising out of or relating to any of the Prepetition Credit Documents shall be deemed forever waived, released and barred.  Nothing in this Final Order vests or confers on any Person (as defined in the Bankruptcy Code), including the Creditors' Committee or any non-statutory committees appointed or formed in the Chapter 11 Cases, standing or authority to pursue any claim or cause of action belonging to the Debtors or their estates, including, without limitation, Challenges with respect to the Prepetition Credit Documents, the Prepetition Debt or the Prepetition Liens.

27.     *Limitation on Use of DIP Loans and DIP Collateral*.  Notwithstanding any other provision of this Final Order or any other order entered by this Court, no DIP Loans, DIP

Collateral, Prepetition Collateral or any portion of the Carve-Out, may be used directly or indirectly by any Debtor, any Guarantor, any official committee appointed in the Chapter 11 Cases, or any trustee appointed in the Chapter 11 Cases or any successor case, including any chapter 7 case, or any other person, party or entity (i) in connection with the investigation, initiation or prosecution of any claims, causes of action, adversary proceedings or other litigation (a) against any of the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties or their respective predecessors-in-interest, agents, affiliates, representatives, attorneys, or advisors, in each case in such capacities, or any action purporting to do the foregoing in respect of the Prepetition Debt, the Prepetition Note Obligations, the Prepetition Second Lien Notes Obligations, liens on the Prepetition Collateral, DIP Obligations, DIP Liens, DIP Superpriority Claims and/or the adequate protection obligations, adequate protection liens and superpriority claims granted to the Prepetition Lenders and the Prepetition Noteholders, as applicable, under the Interim Order or this Final Order, as applicable, or (b) challenging the amount, validity, perfection, priority or enforceability of or asserting any defense, counterclaim or offset with respect to, the Revolver Obligations, Prepetition Note Obligations, the DIP Obligations and/or the liens, claims, rights, or security interests granted under the Interim Order, this Final Order, the DIP Documents, the Prepetition Credit Documents including, in each case, without limitation, for lender liability or pursuant to section 105, 510, 544, 547, 548, 549, 550, or 552 of the Bankruptcy Code, applicable non-bankruptcy law or otherwise; *provided*, however, advisors to any Creditors' Committee may investigate any potential challenges with respect to the Prepetition Credit Documents, the Prepetition Revolver Obligations, the Prepetition Note Obligations, the Prepetition Revolver Liens, and the Prepetition Note Liens during the Challenge Period at an aggregate expense for such investigation, but not litigation, prosecution, objection or

challenge thereto, not to exceed $75,000 in the aggregate; (ii) to prevent, hinder, or otherwise delay the Prepetition Secured Parties', the DIP Agent's or the DIP Lenders', as applicable, enforcement or realization on the Prepetition Revolver Obligations, the Prepetition Note Obligations, the Prepetition Collateral, the DIP Obligations, the DIP Collateral, and the liens, claims, and rights granted to such parties under the Orders, each in accordance with the DIP Documents, the Prepetition Credit Documents or this Final Order; (iii) to seek to modify any of the rights and remedies granted to the Prepetition Secured Parties, the DIP Agent or the DIP Lenders under this Final Order, the Prepetition Credit Documents, or the DIP Documents, as applicable (other than in connection with an Approved Chapter 11 Plan); (iv) to apply to the Court for authority to approve superpriority claims or grant liens or security interests in the DIP Collateral or any portion thereof that are senior to, or on parity with, the DIP Liens, the DIP Superpriority Claims, adequate protection liens, and superpriority claims granted to the Prepetition Lenders or the Prepetition Noteholders, as applicable, unless all DIP Obligations, Prepetition Revolver Obligations, Prepetition Note Obligations, adequate protection obligations, and claims granted to the DIP Agent, the DIP Lenders, or the Prepetition Secured Parties under this Final Order, have been refinanced or paid in full in cash (including the cash collateralization of any letters of credit) or otherwise agreed to in writing by the DIP Required Lenders (as defined in the DIP Credit Agreement); or (v) to seek to pay any amount on account of any claims arising prior to the Petition Date unless such payments are agreed to in writing by the DIP Required Lenders (as defined in the DIP Credit Agreement) or are otherwise included in the Approved Budget.

28.    *Loss or Damage to Collateral*.  Nothing in this Final Order, the DIP Documents, or any other documents related to these transactions shall in any way be construed or interpreted

to impose or allow the imposition upon the DIP Agent, any DIP Lender or any of the Prepetition Secured Parties of any liability for any claims arising from the prepetition or postpetition activities of the Debtors in the operation of their business or in connection with their restructuring efforts (other than the Carve-Out).  The DIP Agent and the DIP Lenders shall not, in any way or manner, be liable or responsible for (i) the safekeeping of the DIP Collateral, (ii) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (iii) any diminution in the value thereof, or (iv) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and all risk of loss, damage or destruction of the DIP Collateral shall be borne by the Loan Parties.

29.    *Final Order Governs*.  In the event of any inconsistency or conflict between the provisions of this Final Order, on the one hand, and the DIP Documents, on the other hand, the provisions of this Final Order shall govern.

30.    *Binding Effect; Successors and Assigns*.  Subject to paragraph 26 above, the DIP Documents and the provisions of this Final Order, including all findings herein, shall be binding upon all parties in interest in the Chapter 11 Cases, including, without limitation, the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, the Creditors' Committee, any non-statutory committees appointed or formed in the Chapter 11 Cases, the Debtors, and their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors) and shall inure to the benefit of the DIP Agent, the DIP Lenders, the Prepetition Secured Parties, and the Debtors and their respective successors and assigns; *provided* that the DIP Agent, the DIP Lenders, and the

Prepetition Secured Parties shall have no obligation to permit the use of the Prepetition Collateral (including Cash Collateral) by, or to extend any financing to, any chapter 7 trustee, chapter 11 trustee or similar responsible person appointed for the estates of the Debtors.

31.     *Limitation of Liability*.   In determining to make any loan or other extension of credit under the DIP Credit Agreement, to permit the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Final Order or the DIP Documents, the DIP Agent and the DIP Lenders, in their capacities as such, shall not (i) be deemed to be in "control" of the operations of the Debtors; (ii) owe any fiduciary duty to the Debtors, their respective creditors, shareholders or estates; and (iii) be deemed to be acting as a "Responsible Person" or "Owner" or "Operator" with respect to the operation or management of the Debtors (as such terms or similar terms are used in the United States Comprehensive Environmental Response, Compensation and Liability Act, 29 U.S.C. §§ 9601, et seq., as amended, or any similar federal or state statute).

32.     *No Waiver.*   No delay or failure by the Prepetition Secured Parties, the DIP Agent or any DIP Lender in the exercise of its rights and remedies under the DIP Documents or this Final Order, as applicable, shall constitute a waiver, in whole or in part, of any of such lender's, noteholder's, agent's, or DIP Lender's rights hereunder or otherwise.

33.     *Proofs of Claim*.   The Prepetition Agents shall not be required to file proofs of claim in the Chapter 11 Cases or any successor case in order to assert claims on behalf of itself and the Prepetition Secured Parties for payment of the Prepetition Revolver Obligations or the Prepetition Note Obligations, as applicable, arising under the Prepetition Credit Documents, including, without limitation, any principal, premium, unpaid interest, fees, expenses, and other amounts under the Prepetition Credit Documents.   The statements of claim in respect of the

Prepetition Revolver Obligations and Prepetition Note Obligations set forth in this Final Order, together with any evidence accompanying the Motion and presented at the Interim Hearing, are deemed sufficient to and do constitute proofs of claim in respect of such debt and such secured status.  The stipulations of the Debtors set forth in paragraph 6 hereof shall be deemed to constitute a timely filed proof of claim for the Prepetition Revolver Agent in respect of all Prepetition Revolver Obligations and the Prepetition Note Agent in respect of all Prepetition Note Obligations.  In addition, the Prepetition Revolver Agent and the Prepetition Note Agent will not be required to file any request for allowance and/or payment of any administrative expenses, and this Final Order shall be deemed to constitute a timely filed request for allowance and/or payment of any Prepetition Revolver Obligations or Prepetition Note Obligations constituting administrative expenses, as applicable and if any.

34.     *Insurance*.  To the extent that any Prepetition Agent is listed as loss payee under the Borrowers' or Guarantors' insurance policies, the DIP Agent is also deemed to be the loss payee under such insurance policies and shall act in that capacity and distribute any proceeds recovered or received in respect of any such insurance policies in the order of priorities set forth herein.

35.     *Effectiveness*.  This Final Order shall constitute findings of fact and conclusions of law and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon entry hereof.  Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any Local Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry and there shall be no stay of execution or effectiveness of this Final Order.

36.    *Headings*.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final Order.

37.    *Payments Held in Trust*.  Except as expressly permitted in this Final Order or the DIP Documents, in the event that any Prepetition Secured Party receives any payment on account of a security interest in DIP Collateral, receives any DIP Collateral or any proceeds of DIP Collateral or receives any other payment with respect thereto from any other source prior to indefeasible payment in full in cash of all DIP Obligations under the DIP Documents, and termination of the Commitments in accordance with the DIP Documents, such Prepetition Secured Party shall be deemed to have received, and shall hold, any such payment or proceeds of DIP Collateral in trust for the benefit of the DIP Agent and the DIP Lenders and shall immediately turn over such proceeds to the DIP Agent, or as otherwise instructed by this Court, for application in accordance with the DIP Documents and this Final Order.

38.    *Credit Bidding*.  (a) The DIP Agent shall have the right to credit bid, in accordance with the DIP Documents, up to the full amount of the DIP Obligations in any sale of the DIP Collateral and (b) subject to paragraph 26 hereof, the Prepetition Lenders and the Prepetition Noteholders shall have the right to credit bid up to the full amount of the Prepetition Revolver Obligations and the Prepetition Note Obligations, respectively, in connection with any sale of any DIP Collateral pursuant to section 363 of the Bankruptcy Code, under a plan of reorganization or liquidation under section 1129 of the Bankruptcy Code, or a sale or disposition by a chapter 7 trustee for any Debtor under section 725 of the Bankruptcy Code, in each case, to the extent provided for in section 363(k) of the Bankruptcy Code, without the need for further Court order authorizing the same, and whether any such sale is effectuated through section 363(k) or 1129(b) of the Bankruptcy Code, by a chapter 7 trustee under section 725 of the

Bankruptcy Code, or otherwise.  For the avoidance of doubt, subject to paragraph 26 hereof, the DIP Lenders' exercise of their unqualified right to credit bid pursuant to section 363(k) of the Bankruptcy Code up to the full amount of the outstanding DIP Obligations (including any accrued interest) in any sale of the Collateral (or any part thereof) may include, with the consent of the applicable Prepetition Agent on behalf of the applicable Prepetition Secured Party, a credit bid of the Prepetition Obligations.

39.     *Bankruptcy Rules*.  The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the Motion.

40.     *Necessary Action*.  The Debtors are authorized to take all such actions as are necessary or appropriate to implement the terms of this Final Order.

41.     *Local Texas Tax Authority*.  Notwithstanding anything in this Final Order to the contrary, to the extent that Bexar County, Pecos County, Tarrant County, Ward County, Comanche County, Limestone County, or Irion County has valid, perfected, enforceable and non-avoidable liens for prepetition ad valorem taxes, or which arise postpetition under state law, on any DIP Collateral, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens and the Prepetition 507(b) Claims shall be junior in priority and subject to such valid, perfected and enforceable liens only to the extent such liens are otherwise senior in priority to the Prepetition Liens or the DIP Liens, as applicable, pursuant to applicable non-bankruptcy law or otherwise constitute a Permitted Encumbrance under (and as defined in) the DIP Documents.

42.     *Retention of Jurisdiction*.  The Court shall retain jurisdiction to implement, interpret, and enforce the provisions of this Final Order, and this retention of jurisdiction shall survive the confirmation and consummation of any chapter 11 plan for any one or more of the

Debtors notwithstanding the terms or provisions of any such chapter 11 plan or any order confirming any such chapter 11 plan.

Dated: August 14th, 2019
Wilmington, Delaware

KAREN B. OWENS
UNITED STATES BANKRUPTCY JUDGE

57