## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

--------------------------------------------------------- x

| | | |
|---|---|---|
| In re: | : | Chapter 11 |
| | : | |
| EMERGE ENERGY SERVICES LP, *et al.*,[1] | : | Case No. 19-11563 (KBO) |
| | : | |
| Debtors. | : | Jointly Administered |
| | : | |
| | : | **Obj. Deadline: Nov. 21, 2019 at 4:00 p.m. (ET)** |
| | : | **Hr'g Date: Dec. 18, 2019 at 2:30 p.m. (ET)** |

--------------------------------------------------------- x

## MOTION OF DEBTORS FOR AN ORDER EXTENDING THE EXCLUSIVITY PERIODS TO FILE AND SOLICIT ACCEPTANCES OF A CHAPTER 11 PLAN AND GRANTING RELATED RELIEF

The debtors and debtors in possession in the above-captioned cases (collectively, the "**Debtors**") hereby file this motion (the "**Motion**") for entry of an order, substantially in the form attached hereto as <u>Exhibit A</u> (the "**Proposed Order**"), under section 1121(d) of title 11 of the United States Code (the "**Bankruptcy Code**"), extending the Debtors' exclusive periods to file a chapter 11 plan and to solicit acceptances of such plan each by approximately ninety (90) days to February 10, 2020 and April 13, 2020, respectively.  In support of this Motion, the Debtors respectfully represent as follows:

### JURISDICTION

1.     This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware dated as of February 29, 2012.  This is a core proceeding under 28 U.S.C. §

---

[1] The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Emerge Energy Services, LP (2937), Emerge Energy Services GP LLC (4683), Emerge Energy Services Operating LLC (2511), Superior Silica Sands LLC (9889), and Emerge Energy Services Finance Corporation (9875).  The Debtors' address is 5600 Clearfork Main Street, Suite 400, Fort Worth, Texas 76109.

157(b)(2).  Venue of this proceeding and this Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

<h1 align="center">BACKGROUND</h1>

2.      On July 15, 2019 (the "**Petition Date**"), the Debtors filed voluntary petitions in this Court commencing cases for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**").  The factual background regarding the Debtors, including their business operations, their capital and debt structures, and the events leading to the filing of the Chapter 11 Cases, is set forth in detail in the *Declaration of Bryan Gaston, Restructuring Officer of the Debtors, in Support of Chapter 11 Petitions and First Day Pleadings* [Docket No. 14] (the "**Gaston Declaration**"), filed with the Court on July 16, 2019, and is fully incorporated herein by reference.

3.      The Debtors continue to manage and operate their businesses as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  On July 30, 2019, the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**") appointed the Official Committee of Unsecured Creditors (the "**Committee**").  As of this date, no trustee or examiner has been requested in the Chapter 11 Cases.

4.      The Chapter 11 Cases are jointly administered for procedural purposes only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

5.      On September 11, 2019, the Debtors filed solicitation versions of the *First Amended Joint Plan of Reorganization for Emerge Energy Services LP and Its Affiliate Debtors Under Chapter 11 of the Bankruptcy Code* (as amended, modified, or supplemented from time to time, the "**Solicitation Plan**") [Docket No. 362] and the *Disclosure Statement for the First Amended Joint Plan of Reorganization for Emerge Energy Services LP and Its Affiliate Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 363] (the "**Disclosure Statement**").

RLF1 22308447v.2

6.      On September 11, 2019, the Court entered the *Order (I) Approving the Disclosure Statement, (II) Establishing the Voting Record Date, Voting Deadline and Other Dates, (III) Approving Procedures for Soliciting, Receiving and Tabulating Votes on the Plan and for Filing Objections to the Plan, (IV) Approving the Manner and Forms of Notice and Other Related Documents, (V) Approving Procedures for Assumption of Contracts and Leases and Form and Manner of Assumption Notice, and (VI) Granting Related Relief* [Docket No. 361] (the "**Disclosure Statement Order**").   Pursuant to the Disclosure Statement Order, the Bankruptcy Court, among other things, approved the Disclosure Statement and established certain solicitation and voting procedures.   In addition, a hearing to consider confirmation of the Plan commenced on October 30, 2019 (the "**Confirmation Hearing**").

7.      On November 1, 2019, the Debtors filed the *Second Amended Joint Plan of Reorganization for Emerge Energy Services LP and Its Affiliate Debtors Under Chapter 11 of the Bankruptcy Code* [Docket No. 596] (as may be amended, modified, or supplemented from time to time, the "**Second Amended Plan**" and, together with the Solicitation Plan, the "**Plan**").[2]  The Second Amended Plan is meant to address certain informal comments received by the Debtors and to resolve certain limited objections filed with respect to the Solicitation Plan, all as more fully set forth in the response charts attached to the Debtors' confirmation brief filed on October 24, 2019 [Docket No. 546].

8.      As of the date hereof, the Plan has not yet been confirmed.   Accordingly, the Debtors file this Motion in order to provide sufficient time to obtain confirmation and, ultimately,

---

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the Gaston Declaration or the Plan, as applicable.

consummation of the Plan without distraction from competing plans of reorganization that may be filed by third parties.

## RELIEF REQUESTED

9.      By this Motion, the Debtors seek entry of the Proposed Order, substantially in the form attached hereto as <u>Exhibit A</u>, extending the exclusive periods to file a chapter 11 plan and solicit acceptances of such plan each by approximately ninety (90) days to February 10, 2020 and April 13, 2020, respectively.[3]

## BASIS FOR RELIEF

10.      Section 1121(b) of the Bankruptcy Code provides for an initial period of 120 days after the commencement of a chapter 11 case during which a debtor has the exclusive right to file a plan (the "**<u>Exclusive Filing Period</u>**").  Section 1121(c)(3) of the Bankruptcy Code provides that if a debtor files a plan within the Exclusive Filing Period, it has an initial period of 180 days after the commencement of the chapter 11 case to obtain acceptance of such plan (the "**<u>Exclusive Solicitation Period</u>**," and together with the Exclusive Filing Period, the "**<u>Exclusive Periods</u>**"). Section 1121(d) of the Bankruptcy Code permits the Bankruptcy Court to extend the Exclusive Periods for "cause" and, for the reasons set forth herein, the Debtors believe that "cause" exists.

### A.      Factors Considered by Courts in Determining Whether to Extend Exclusivity Periods for "Cause"

11.      The Exclusive Periods are intended to afford a debtor the opportunity to propose a plan and to solicit acceptances of the plan without the deterioration of, and the disruption to, the debtor's business operations that might be caused by the filing of competing plans by third parties.

---

[3] Pursuant to Local Rule 9006-2, the filing of this Motion prior to the expiration of the current Exclusive Periods (as defined herein) shall automatically extend the Exclusive Periods until such time as the Court rules on this Motion.  *See* Del. Bankr. L.R. 9006-2.

Section 1121(d) of the Bankruptcy Code allows the Bankruptcy Court to extend the Exclusive

Periods "for cause."  Specifically, section 1121(d) of the Bankruptcy Code provides:

> (1)    Subject to paragraph (2), on request of a party in interest made within the respective periods specified in subsections (b) and (c) of this section and after notice and a hearing, the court may for cause reduce or increase the 120-day period or the 180-day period referred to in this section.

> (2)    (A)    The 120-day period specified in paragraph (1) may not be extended beyond a date that is 18 months after the date of the order for relief under this chapter.

> (B)    The 180-day period specified in paragraph (1) may not be extended beyond a date that is 20 months after the date of the order for relief under this chapter.

11 U.S.C. § 1121(d).

12.    It is well established that the decision to extend the Exclusive Periods is left to the

sound discretion of the Bankruptcy Court and should be based upon the facts and circumstances

of the particular case.[4]  *See First Am. Bank of N.Y. v. Southwest Gloves and Safety Equip., Inc.*, 64

B.R. 963, 965 (D. Del. 1986); *In re Reetz*, 61 B.R. 412, 414 (Bankr. W.D. Wis. 1986).  Although

the Bankruptcy Code does not define "cause" for purposes of extensions to Exclusive Periods,

courts have looked to the legislative history of section 1121(d) of the Bankruptcy Code for

guidance.  *See In re Gibson & Cushman Dredging Corp.*, 101 B.R. 405, 409 (E.D.N.Y. 1989); *In

re Amko Plastics, Inc.*, 197 B.R. 74, 77 (Bankr. S.D. Ohio 1996).  Indeed, courts have found that

Congress did not intend the 120- and 180-day periods to be a hard and fast rule.  *See Amko Plastics*,

197 B.R. at 77 (noting that Congress intended courts to have flexibility in dealing with extensions

---

[4] Although the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("**BAPCPA**") amended section 1121(d) of the Bankruptcy Code by prohibiting extensions of the Exclusive Filing Period and Exclusive Solicitation Period beyond eighteen (18) and twenty (20) months of the petition date, respectively, there was no revision to the standards for obtaining interim extensions.  Accordingly, pre-BAPCPA case law continues to apply and must be examined in the context of these Chapter 11 Cases.

of exclusivity); *Gaines v. Perkins (In re Perkins)*, 71 B.R. 294, 297 (W.D. Tenn. 1987) ("The hallmark of . . . [Section 1121(d)] is flexibility."). Rather, Congress intended the Exclusive Periods to be of an adequate length, given the circumstances, for a debtor to formulate, negotiate, and draft a viable plan of reorganization, which by definition means one supported by some or all of a debtor's key constituents, without the disruption to its business that would occur with the filing of competing plans. *See Geriatrics Nursing Home v. First Fidelity Bank, N.A.*, 187 B.R. 128, 133 (D.N.J. 1995) ("The opportunity to negotiate its plan unimpaired by competition, the court held, is meant to allow the debtor time to satisfy all creditors and win support for its restructuring scheme and thus ensure its survival as a business.").

13.    Courts have relied on each of the following factors, among others, in determining whether cause exists to extend the Exclusive Periods: (i) the size and complexity of the case; (ii) the necessity of sufficient time to negotiate and prepare adequate information; (iii) the existence of good faith progress toward reorganization; (iv) whether the debtor is paying its debts as they come due; (v) whether the debtor has demonstrated reasonable prospects for filing a viable plan; (vi) whether the debtor has made progress in negotiating with creditors; (vii) the length of time the case has been pending; (viii) whether the debtor is seeking the extension to pressure creditors; and (ix) whether unresolved contingencies exist. *See, e.g., Cont'l Casualty Co. v. Burns & Roe Enters., Inc.*, 2005 U.S. Dist. LEXIS 26247, at *11-12 (D.N.J. 2005); *In re Gibson*, 101 B.R. at 409-10 (E.D.N.Y. 1989); *In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 184 (Bankr. D.N.J. 2002); *In re Express One Int'l Inc.*, 194 B.R. 98, 100 (Bankr. E.D. Tex. 1996); *In re Grand Traverse Dev. Co. Ltd. P'ship*, 147 B.R. 418, 420 (Bankr. W.D. Mich. 1992); *In re Sw. Oil Co. of Jourdanton, Inc.*, 84 B.R. 448, 451-54 (Bankr. W.D. Tex. 1987). The application of these factors to the facts

6

and circumstances of these Chapter 11 Cases demonstrates that the requested extensions are both

appropriate and necessary.

**B.      Cause Exists for an Extension of the Exclusive Periods**

14.      As described in the Gaston Declaration, prior to the Petition Date, the Debtors

diligently evaluated, in consultation with their advisors, a number of options to address the

Debtors' looming liquidity issues.  Given the lack of alternatives and the Debtors' defaults under

the Prepetition Credit Agreement and the Prepetition Notes Agreement, the Debtors focused their

efforts on negotiations with Insight Equity, the Revolving Loan Lenders, and the Noteholders,

which culminated in the execution of the Restructuring Support Agreement.  Shortly after the

Petition Date, the Debtors filed the Plan and Disclosure Statement with the support of the parties

to the Restructuring Support Agreement.  The Debtors believe that it is in the best interest of their

estates and all parties in interest for the Debtors to pursue confirmation of the Plan.  Accordingly,

the Debtors believe cause exists to grant the extension of the Exclusive Periods to ensure a

successful emergence from bankruptcy without the distraction of competing, third-party chapter

11 plans.

15.      Additionally, the Debtors believe that cause exists to extend the Exclusive Periods

for the following reasons:

**a.      The Size, Complexity, and Duration of these Chapter 11 Cases**

16.      These Chapter 11 Cases are large in size and complex in nature.  As described in

more detail in the Gaston Declaration, the Debtors are engaged in the business of mining,

processing, and distributing silica sand proppant, a key component in the hydraulic fracturing of

oil and gas wells.  As of the Petition Date, the Debtors had approximately $215.7 million in

principal outstanding under their Notes Purchase Facility, and approximately $66.7 million in

principal outstanding under their Revolving Loan Facility.  In addition, the Debtors are party to various long-term contracts for the lease of railcars and transload and terminal storage sites located near major shale plays.  Many of these contracts and leases proved uneconomical for the Debtors' operations but, in an effort to maximize value for the estates, the Debtors have spent a significant amount of time renegotiating these agreements.  Moreover, the Debtors filed these Chapter 11 Cases less than four (4) months ago, and this is the Debtors' first request for an extension of the Exclusive Periods.

17.    Accordingly, the size, complexity, and length of the Chapter 11 Cases weighs in favor of granting an extension of the Exclusive Periods.

**b.    The Necessity of Sufficient Time to Negotiate and Prepare Adequate Information**

18.    Given the progress that the Debtors have made in these Chapter 11 Cases and the ongoing negotiations and pending confirmation process, the Debtors believe that it is reasonable to request extensions of the Exclusive Periods.  Granting the requested extensions will give the Debtors a full and fair opportunity to confirm a plan without the distraction, cost and delay of a competing plan process.  *See In re Energy Conversion Devices, Inc.*, 474 B.R. 503, 507 (Bankr. E.D. Mich. 2012) ("In enacting 11 U.S.C. § 1121, Congress intended to allow the debtor a reasonable time to obtain confirmation of a plan without the threat of a competing plan.  It was intended that . . . a debtor should be given the unqualified opportunity to negotiate a settlement and propose a plan of reorganization without interference from creditors and other interests.") (citation and internal quotation marks omitted).  Accordingly, the Debtors submit that this factor supports the relief requested.

**c.      Good-Faith Progress Made in these Chapter 11 Cases**

19.      The Debtors have made significant and material progress in these Chapter 11 Cases, all of which has culminated in the filing and prosecution of the Plan and Disclosure Statement. The Debtors have worked diligently on a number of critical matters since the Petition Date in addition to the typical day-to-day obligations that debtors in possession face.  Specifically, since the Petition Date, the Debtors have addressed several complex and/or contested issues, including but not limited to the following.

   i.      **Obtaining First Day Relief**.   The Debtors stabilized their business operations through various operational first day motions and orders.  This allowed them to, among other things, pay certain shippers, lien claimants and royalty interest owners and continue using their cash management system.

   ii.      **Obtaining Debtor-in-Possession Financing**.   The Debtors negotiated extensively with the Revolving Loan Lenders regarding entry into the DIP Facility, and the Court entered interim and final orders approving the DIP Facility.

   iii.      **Filing, Amending, and Responding to Inquiries Regarding Schedules of Assets and Liabilities and Statements of Financial Affairs**.   The Debtors filed their schedules and statements after compiling information from books, records, and documents relating to claims, assets, and contracts of each Debtor and amended such schedules and statements as appropriate.

   iv.      **Obtaining Entry of the Disclosure Statement Order and Solicitation of the Plan**.   On September 11, 2019, the Debtors obtained entry of the Disclosure Statement Order and, subsequently thereto, solicited votes to accept the Plan.

20.      The Debtors continue to make good faith progress towards confirmation of the Plan and emergence from chapter 11.  These good faith efforts and progress support an extension of the Exclusive Periods.

21.      In addition, the Debtors have made significant efforts to resolve open issues regarding numerous matters in these Chapter 11 Cases with the U.S. Trustee, their creditor constituencies, and certain third parties.   From in-person meetings to frequent telephone

9

RLF1 22308447v.2

conferences, the Debtors and their advisors have maintained regular contact with such parties on material matters. Further, by filing amended versions of the Plan, the Debtors have attempted to address and resolve certain issues relating to certain outstanding confirmation objections. The Debtors' efforts to promote consensus further support the extension of the Exclusive Periods. *See, e.g., In re MSR Resort Golf Course LLC*, No. 11-10372 (SHL) (Bankr. S.D.N.Y.), Hr'g Tr. Nov. 3, 2011, 377:2-8 (granting debtors' second exclusivity extension based, in part, on compromises reached between the debtors and their stakeholders and concluding that the debtors' "good-faith progress is also evidenced by these settlements, which evidence . . . progress in trying to reach some consensus on the end game strategy in these cases, and the timing for such a strategy"); *In re Tribune Co.*, No. 08-13141 (KJC) (Bankr. D. Del.), Hr'g Tr. Dec. 7, 2009, 70:2-4 (extending exclusivity period based, in part, on the fact that "there are ongoing discussions, which may or may not result in a global resolution").

22. Consistent with their fiduciary duties, the Debtors will use the extended Exclusive Periods to confirm the Plan, or, if necessary, to continue to negotiate with all interested parties to reach an alternative resolution of these Chapter 11 Cases. The Debtors' substantial progress in negotiating with their creditors and administering their cases supports the extension of the Exclusive Periods.

**d.** **The Debtors are Paying Their Debts as They Come Due**

23. Extension of the Exclusive Periods will not prejudice the legitimate interests of postpetition creditors because the Debtors continue to make timely payments on their undisputed postpetition obligations. As such, this factor weighs in favor of allowing the Debtors to extend the Exclusive Periods.

RLF1 22308447v.2

**e.** **The Debtors Are Not Seeking an Extension to Pressure Creditors**

24.       Granting the requested extensions to the Exclusive Periods will not pressure the Debtors' creditor constituencies or grant the Debtors any unfair bargaining leverage.  The Debtors have no ulterior motive in seeking an extension of the Exclusive Periods.  The Debtors have been in regular communication with creditors on numerous issues facing their estates, including the terms of any Plan and Disclosure Statement, and have worked diligently in the prepetition and postpetition periods to maximize the value of their estates.  The Debtors are not seeking an extension to pressure their creditors to take any action, but only to ensure that the Debtors can pursue emergence from chapter 11 free from distraction.

**f.** **Termination of the Debtors' Exclusive Periods Would Adversely Impact the Chapter 11 Cases**

25.       Termination of the Exclusive Periods would adversely impact the Debtors' efforts to preserve and maximize the value of their estates and the progress of the Chapter 11 Cases.  Such termination may disincentivize creditors from negotiating with the Debtors, and would certainly undermine the Debtors' efforts to successfully confirm a chapter 11 plan.  Moreover, the proposal and solicitation of any competing plan could greatly complicate and increase the cost of administering the Chapter 11 Cases.

26.       Based upon the foregoing, the Debtors respectfully submit that cause exists in these Chapter 11 Cases to extend the Exclusive Periods as requested herein.

## CONSENT TO JURISDICTION

27.       Pursuant to Rule 9013-1(f) of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware, the Debtors consent to the entry of a final judgment or order with respect to the Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

11

## NOTICE

28.     Notice of this Motion will be given to: (i) the U.S. Trustee; (ii) counsel to the Committee; (iii) counsel to the DIP Agent and the Prepetition Agents; (iv) counsel to Insight Equity; and (v) all parties entitled to notice pursuant to Bankruptcy Rule 2002.  The Debtors submit that, under the circumstances, no other or further notice is required.

29.     A copy of this Motion is available on (i) the Court's website: www.deb.uscourts.gov, and (ii) the website maintained by the Debtors' Claims and Noticing Agent, Kurtzman Carson Consultants LLC, at https://www.kccllc.net/EmergeEnergy.

## NO PRIOR REQUEST

30.     No previous request for the relief sought herein has been made to this Court or any other court.

RLF1 22308447v.2

WHEREFORE, the Debtors respectfully request that the Court enter the Proposed Order, substantially in the form attached hereto as Exhibit A, granting the relief requested in the Motion and such other and further relief as may be just and proper.

Dated: November 7, 2019
      Wilmington, Delaware

      /s/ Brett M. Haywood

**RICHARDS, LAYTON & FINGER, P.A.**

John H. Knight (No. 3848)
Paul N. Heath (No. 3704)
Zachary I. Shapiro (No. 5103)
Brett M. Haywood (No. 6166)
Travis J. Cuomo (No. 6501)
One Rodney Square
920 North King Street
Wilmington, DE  19801
Telephone:  (302) 651-7700
Facsimile:  (302) 651-7701
E-mail:  knight@rlf.com
      heath@rlf.com
      shapiro@rlf.com
      haywood@rlf.com
      cuomo@rlf.com

- and -

**LATHAM & WATKINS LLP**

George A. Davis (admitted *pro hac vice*)
Keith A. Simon (admitted *pro hac vice*)
Hugh K. Murtagh (admitted *pro hac vice*)
Liza L. Burton (admitted *pro hac vice*)
885 Third Avenue
New York, New York 10022
Telephone:  (212) 906-1200
Facsimile:  (212) 751-4864
E-mail:  george.davis@lw.com
      keith.simon@lw.com
      hugh.murtagh@lw.com
      liza.burton@lw.com

*Counsel for Debtors and Debtors-in-Possession*

RLF1 22308447v.2