## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| EMERGE ENERGY SERVICES LP, *et al.*,[1] | Case No. 19- 11563 (KBO) |
| Debtors. | (Jointly Administered) |
| | **Objection Deadline: November 21, 2019 at 4:00 p.m. (ET)**<br>**Re: Docket No. 626** |

### OBJECTION OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS TO MOTION OF DEBTORS FOR AN ORDER EXTENDING THE EXCLUSIVITY PERIODS TO FILE AND SOLICIT ACCEPTANCES OF A CHAPTER 11 PLAN AND GRANTING RELATED RELIEF

The Official Committee of Unsecured Creditors of the above-captioned debtors and debtors in possession (the "Committee") hereby files this objection (the "Objection") to the *Motion of Debtors for an Order Extending the Exclusivity Periods to File and Solicit Acceptances of a Chapter 11 Plan and Granting Related Relief* [D.I. 626] (the "Motion"). In support of the Objection, the Committee respectfully submits as follows:

### PRELIMINARY STATEMENT

1.     The lynchpin of the Debtors' assertions as to why cause exists to extend their exclusive periods to file and solicit acceptances of a chapter 11 plan is the Debtors' "progress" in these Chapter 11 Cases, the Debtors' "ongoing negotiations," the Debtors' "significant efforts to resolve open issues regarding numerous matters . . . with . . . their creditor constituencies," the Debtors' "efforts to promote consensus," and the Debtors' "regular communication with creditors on numerous issues facing their estates, including the Plan and the Disclosure Statement." Motion

---

[1]     The Debtors in these cases, along with the last four digits of each Debtor's federal tax identification number, are: Emerge Energy Services LP (2937), Emerge Energy Services GP LLC (4683), Emerge Energy Services Operating LLC (2511), Superior Silica Sands LLC (9889), and Emerge Energy Services Finance Corporation (9875). The Debtors' address is 5600 Clearfork Main Street, Suite 400, Fort Worth, Texas 76109.

at ¶¶ 18, 20, 21 and 24.  The Debtors further boldly assert that "[t]he Debtors' **substantial progress in negotiating with their creditors** and administering their cases supports the extension of the Exclusive Periods."  Motion at ¶ 22 (emphasis added).

2.     These statements must be holdovers from other standard exclusivity extension motions from typical cases (where debtors and creditor constituencies do negotiate) because they certainly could not have been meant to describe these Chapter 11 Cases.  Since the Petition Date, the Debtors have not engaged the Committee, a constituency that represents potentially over $570 million in unsecured claims against the Debtors, in **any** negotiations over the terms of the Plan. Rather, it is the Committee that has attempted to negotiate with the Debtors and the other constituencies in the capital structure, yet the Committee's proposals have been met with deafening silence.  The Debtors have had ample opportunity to reach out to the Committee both before and since the confirmation trial ended and the matter has been *sub judice*.  Yet, the telephone has not rung.  As a result, the Committee submits that the Debtors had and have no intention of negotiating. Obviously, if the Court confirms the Plan, the Motion is moot.  But if, as the Committee hopes, the Court denies the deeply flawed Plan, the Motion should be denied so that the Committee can explore other alternatives (including a sale) rather than being undoubtedly offered more crumbs in the next ill-fated Plan attempt.

## BACKGROUND

3.     On July 15, 2019, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code.  No trustee has been appointed.  The Debtors are continuing in possession of their properties and are operating and managing their businesses as debtors-in-possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.

2

4.      On July 30, 2019 (the "<u>Retention Date</u>"), the Office of the United States Trustee for Region 3 (the "<u>U.S. Trustee</u>") appointed a statutory committee of unsecured creditors pursuant to section 1102(a)(1) of the Bankruptcy Code [D.I. 111].

5.      On September 11, 2019, the Debtors filed the *First Amended Joint Plan of Reorganization for Emerge Energy Services LP and its Affiliate Debtors Under Chapter 11 of the Bankruptcy Code* [D.I. 362] and solicited the same.

6.      On October 15, 2019, the Committee filed the *Objection of the Official Committee of Unsecured Creditors to Confirmation of the First Amended Joint Plan of Reorganization of Emerge Energy Services LP and its Affiliate Debtors Under Chapter 11 of the Bankruptcy Code* [D.I. 495, 497, 499].

7.      A hearing on confirmation of the Plan commenced on October 30, 2019 and concluded on November 13, 2019.  During the trial, and in an effort to resolve certain objections (but not that of the Committee), the Debtors filed a further amended plan [D.I. 596] (the "<u>Plan</u>") on November 1, 2019.

8.      On November 7, 2019, the Debtors filed the Motion seeking to extend the Exclusive Filing Period[2] and Exclusive Solicitation Period by ninety (90) days to February 10, 2020 and April 13, 2020, respectively.

## ARGUMENT

9.      Section 1121(d)(1) of the Bankruptcy Code provides that after notice and a hearing, a bankruptcy court may "for cause" increase a debtor's exclusivity period to file a plan of reorganization and complete solicitation of votes for such plan.  *See* 11 U.S.C. § 1121(d)(1).  A

---

[2]      Capitalized terms used herein but not otherwise defined herein shall have the meaning ascribed to them in the Motion.

debtor has the burden of proof to make "a clear showing" that cause exists in order to support an extension of the exclusivity period. *See In re Curry Corp.*, 148 B.R. 754, 756 (Bankr. S.D.N.Y. 1992); *see also In re Cent. Jersey Airport Servs., LLC*, 282 B.R. 176, 184 (Bankr. D.N.J. 2002) (stating that the moving party, *i.e.*, the debtor, bears the burden of proving that "cause" exists justifying the grant of an extension); *In re Sharon Steel Corp.*, 78 B.R. 762, 765 (Bankr. W.D. Pa. 1987) (holding that the debtor, as the movant, has the burden of proving, or offering to prove, that sufficient cause exists to justify an extension of the exclusivity period). Although "cause" is not defined in the Bankruptcy Code, bankruptcy courts have "great latitude" and flexibility in determining whether a debtor has satisfied its burden to demonstrate cause for an exclusivity extension. *See In re Energy Conversion Devices, Inc.*, 474 B.R. 503, 507 (Bankr. E.D. Mich. 2012); *see also In re Lehigh Valley Prof's Sports Club, Inc.*, 2000 WL 290187, at *2 (Bankr. E.D. Pa. Mar. 14, 2000) (stating that whether to grant an extension request is within the sound discretion of the bankruptcy judge).

10.    Whether a debtor has established cause is determined on a case-by-case basis on the facts and circumstances of that specific case. *See, e.g.*, *Geriatrics Nursing Home, Inc. v. First Fid. Bank, N.A. (In re Geriatrics Nursing Home, Inc.)*, 187 B.R. 128, 132 (D.N.J. 1995) (stating that the Bankruptcy Code provides "great latitude to the Bankruptcy Judge in deciding, on a case-specific basis, whether to modify the exclusivity period on a showing of 'cause'"); *First Am. Bank of New York v. Southwest Gloves & Safety Equip., Inc.*, 64 B.R. 963, 965 (D. Del. 1986) (stating that section 1121(d) provides the bankruptcy court with flexibility to reduce or extend the exclusivity period). In making this determination, bankruptcy courts typically consider the following factors:

(a) whether the debtor is seeking an extension of exclusivity in order to pressure creditors to submit to the debtor's reorganization demands;

4

(b) the existence of good faith progress towards reorganization;

(c) whether the debtor has made progress in negotiations with its creditors;

(d) whether the debtor has demonstrated reasonable prospects for filing a viable plan;

(e) the amount of time which has elapsed in the case;

(f) the size and complexity of the case;

(g) the necessity of sufficient time to permit the debtor to negotiate a plan of reorganization and prepare adequate information to allow a creditor to determine whether to accept such plan;

(h) the fact that the debtor is paying its bills as they become due; and

(i) whether an unresolved contingency exists.

*In re Adelphia Commc'ns Corp.*, 336 B.R. 610, 674 (Bankr. S.D.N.Y. 2006) (*citing In re Dow Corning Corp.*, 208 B.R. 661, 664 (Bankr. E.D. Mich. 1997)); *see also Cent. Jersey*, 282 B.R. at 184. These factors, though instructive, are not necessarily determinative on their own of whether extension is appropriate. *In re Adelphia Commc'ns Corp.*, 352 B.R. 578, 587 (Bankr. S.D.N.Y. 2006). A subset of the above factors may be more important than others, given the facts of the specific case, and the court is within its discretion to make that determination. *See Bunch v. Hoffinger Indus., Inc. (In re Hoffinger Indus., Inc.)*, 292 B.R. 639, 644 (B.A.P. 8th Cir. 2003).

11.     Here, the balance of factors favors denial of the Motion. The Debtors have not made ***good faith*** progress towards a ***consensual*** plan. The Plan, like much in these cases, was not negotiated with the Committee – which represents the largest creditor constituency – prior to or even after filing. While the Debtors' assert that they have "attempted to address and resolve certain issues relating to outstanding confirmation objections" and have attempted to "promote consensus," the Committee has not been engaged by the Debtors <u>at all</u> in these alleged efforts. Motion ¶ 21. The Debtors state that they will use the proposed extended Exclusive Periods "to confirm the Plan, or, ***if necessary***, to *continue to negotiate with all interested parties* to reach an alternative resolution of these Chapter 11 Cases." *Id*. at ¶ 22 (emphasis added). Moreover, the

5

Debtors characterize their actions in these Chapter 11 Cases as having created "substantial progress in negotiating with their creditors." *Id*. The Debtors would have the Court believe that there have been and continue to be ongoing negotiations to reach an alternative resolution with all interested parties which by inference or omission of specific reference **includes** the Committee. Yet, nothing could be further from the truth, as the Debtors have completely failed to engage the Committee representing the interests of holders of potentially over $570 million in claims, the only impaired creditor class that was not a party to the prepetition Restructuring Support Agreement ("RSA"). In fact, the Committee undertook good faith efforts to propose a settlement to the Debtors prior to the commencement of the confirmation hearing and such proposal was met with silence, a far cry from "attempt[ing] to promote consensus." The Committee has not received any overtures from the Debtors regarding an alternative resolution, and the Debtors have been intent upon confirming the Plan, as currently proposed, which nearly mirrors the Plan terms set forth in the RSA.[3]

12.     Even factors that would at first glance appear to favor the Debtors here are equivocal at best. For instance, the fact that this is the Debtors' first motion does not automatically create "cause." "[C]ourts have not hesitated to deny a first motion to extend exclusivity where the circumstances warrant it." *See In re GMG Capital Partners III, L.P.*, 503 B.R. 596, 601 (Bankr. S.D.N.Y. 2014); *In re Gen. Bearing Corp.*, 136 B.R. 361 (Bankr. S.D.N.Y. 1992); *In re All Seasons Indus., Inc.*, 121 B.R. 1002, 1004 (Bankr. N.D. Ind. 1990) (noting, in denying first extension request, that exclusivity motions should "be granted neither routinely nor cavalierly"); *In re*

---

[3]     To illustrate the animus held by the Debtors and their secured lenders for the unsecured creditors (or more likely their professionals) in challenging the Plan, the Debtors, in filing the final amendment to the Plan (during the trial), actually and intentionally (per communications with Debtors' counsel) removed the Committee professionals' ability to be paid post-Effective Date for filing their final fee applications (no such change was made to the Debtors' professionals' ability to be so compensated). Although substantively a minor point in these unnecessarily protracted proceedings, such bullying is indicative of how the Debtors will deal with the Committee in negotiating a new plan if confirmation of the current one is denied. It is hardly suggestive of future consensus building.

*Sharon Steel Corp.*, 78 B.R. at 766 (denying first motion to extend exclusivity in large, complex case); *In re Am. Fed'n of Television & Radio Artists*, 30 B.R. 772 (Bankr. S.D.N.Y. 1983). *Cf. In re Borders Grp., Inc.*, 460 B.R. 818, 821 (Bankr. S.D.N.Y. 2011) (granting extension but noting that "[a]lthough this is the Debtors' first request to extend their Exclusive Periods, that fact, by itself, does not constitute cause for an extension"). Furthermore, although the Debtors' cases are neither small, nor simple, "size and complexity alone cannot suffice as 'cause'" to warrant a debtor's request for an extension of exclusivity – they must be "accompanied by other factors . . . to justify extension of plan exclusivity." *In re Pub. Serv. Co. of N.H.*, 88 B.R. 521, 537 (Bankr. D.N.H. 1988).

13.     Despite the Debtors' arguments to the contrary, developments in these cases to date do not warrant the requested exclusivity extensions. The Debtors have failed to engage in negotiations to build true creditor consensus and have instead focused on delivering value to HPS and unwarranted releases to their equity sponsor and other insiders.  The Plan is a product of this approach.  Other parties-in-interest should have the opportunity to truly advance these cases themselves.  Termination of the Debtors' Exclusive Periods will allow the Committee to seek and propose alternative resolutions to these Chapter 11 Cases, including the sale of all or parts of the Debtors' assets.

WHEREFORE, the Committee respectfully requests that the Court (i) enter an order denying the Motion, and (ii) grant such other and further relief as the Court deems just and proper.

7

Dated:  November 21, 2019
       Wilmington, Delaware

**POTTER ANDERSON & CORROON LLP**

*/s/ D. Ryan Slaugh*
Jeremy W. Ryan (DE Bar No. 4057)
Christopher M. Samis (DE Bar No. 4909)
L. Katherine Good (DE Bar No. 5101)
Aaron H. Stulman (DE Bar No. 5807)
D. Ryan Slaugh (DE Bar No. 6325)
1313 North Market Street, Sixth Floor
Wilmington, DE  19801
Telephone:  (302) 984-6000
Facsimile:  (302) 658-1192
Email:  jryan@potteranderson.com
       csamis@potteranderson.com
       kgood@potteranderson.com
       astulman@potteranderson.com
       rslaugh@potteranderson.com

-and-

**KILPATRICK TOWNSEND & STOCKTON LLP**

Todd C. Meyers (admitted *pro hac vice*)
David M. Posner (admitted *pro hac vice*)
Kelly Moynihan (admitted *pro hac vice*)
The Grace Building
1114 Avenue of the Americas
New York, NY  10036
Telephone:  (212) 775-8700
Facsimile:  (212) 775-8800
Email:  tmeyers@kilpatricktownsend.com
       dposner@kilpatricktownsend.com
       kmoynihan@kilpatricktownsend.com

-and-

**KILPATRICK TOWNSEND & STOCKTON LLP**

Lenard M. Parkins (admitted *pro hac vice*)
700 Louisiana Street, Suite 4300
Houston, TX  77002
Telephone:  (281) 809-4100
Facsimile:  (281) 929-0797
Email:  lparkins@kilpatricktownsend.com

*Counsel to the Official Committee of Unsecured Creditors
of Emerge Energy Services LP, et al.*